## VAN TASSEL *vs.* CAPRON.

Where words are actionable only on account of the official or professional character of the plaintiff, it is not enough that they tend to injure him in his office or calling, but they must relate to his official or business character, and impute mis-conduct to him *in that character.*

The declaration charged the speaking of the following words of the plaintiff in his character of a justice of the peace: " There is a combined company here to cheat strangers, and 'Squire Van Tassel has a hand in it. K. A., J. G. and 'Squire Van Tassel are a set of damned black-legs ;" but it did not shew that the impu-tation was connected with the plaintiff's official conduct ; *held,* not actionable.

Words charging the plaintiff, a justice of the peace, with omitting to inform a party who had recovered a judgment before him, of the fact that the constable, who had the execution, had rendered himself liable for not returning the same in time, do not impute official misconduct.

Van Tassel *v.* Capron.

DECLARATION for verbal slander. Introductory averment, that the plaintiff before, and at the time, &c. was a justice of the peace of the county of Warren, and as such justice, on the 28th of February, 1842, at Queensbury in said county, had rendered a judgment in favor of the defendant Capron, against Davis & Granger, on which an execution was issued on the 8th of March following, to Kenworthy, a constable : that afterwards, on the 1st of July, 1842, the defendant sold the judgment to King Allen and Ira Greene for a price greatly inadequate to its nominal value ; that the defendant was a stranger at Queensbury ; that the plaintiff never was guilty, &c. ; nevertheless the defendant contriving, &c. to injure the plaintiff in his said office, and cause it to be believed that the plaintiff, as such justice, had combined and conspired with Allen and Greene to cheat and defraud strangers, and in pursuance of such combination and conspiracy had concealed from the defendant, stranger as aforesaid, the pretended liability of Kenworthy, as such constable, and his sureties to the defendant, for not returning the execution in due time ; and by such concealment had caused the defendant, stranger as aforesaid, to sell the judgment for a price greatly inadequate to the value thereof ; on, &c. at, &c. in a certain discourse which the defendant had of and concerning the plaintiff in his office of justice of the peace, and of and concerning the judgment, and a pretended undue return of the execution, and of and concerning the sale of the judgment, &c., the defendant spoke these false &c. words—setting them out with proper innuendos—" I have sold that judgment ; I got a note for one half the amount of the judgment, and I don't see why 'Squire Van Tassel (plaintiff) did not tell me that the execution had not been returned in time, so that I could sue the constable and his bail. There is a combined company here (at Queensbury) to cheat strangers, and 'Squire Van Tassel has a hand in it. King Allen, Ira Green and 'Squire Van Tassel are a set of damned black-legs. The execution was not returned within two days of the time, and I did not know it until after I had sold the judgment : King Allen then told me. 'Squire Van Tassel was in the combination

with King Allen and Ira Greene;" thereby intending, &c. Demurrer and joinder.

*D. Wright & N. Hill, jr.*, for the defendant.

*M. T. Reynolds*, for the plaintiff.

*By the Court*, Bronson, Ch. J.   It is not necessary to consider the questions of form which have been made; for I am of opinion that the declaration is bad in substance.   It is the privilege of the vulgar. to use coarse and abusive language; and no action will lie for calling a man such opprobrious names as liar, cheat, rascal, swindler, blackleg, and the like.   Nor will such words be actionable though spoken of one who holds an office, or exercises some trade or profession, unless they are spoken of, and touch him in his office or calling.   It is not enough that the words may tend to injure him in his office or calling, unless they are spoken of him in his official or business character.   In *Oakley* v. *Farrington* (1 *John. Cas.* 129,) the plaintiff was a justice of the peace, and the words were, "'Squire Oakley is a damned rogue."   The plaintiff was nonsuited on the ground, that although the words were spoken of a magistrate, they had no relation to his official character or conduct. In *Ayre* v. *Craven*, (2 *Ad. & Ellis*, 2,) the words were laid to have been spoken of the plaintiff in his profession as a physician, and imputed adultery.   After verdict for the plaintiff, the judgment was arrested.   The court said, that after full examination of the authorities, they thought the declaration ought not merely to state that such scandalous conduct was imputed to the plaintiff in his profession, but also to set forth *in what manner* it was connected by the speaker with that profession..   Chief Baron Comyn says, "Words not actionable in themselves, are not actionable when spoken of one in an office, profession or trade, *unless they touch him in his office*," &c.   (*Action upon the case for Defa. D.* 27.)   This doctrine was fully approved in *Dorley* v. *Roberts*, (2 *Bing. N. C.* 835,) where it was said of an attorney, that "he has defrauded his creditors, and has

been horsewhipped off the course at Doncaster." The jury found that the words had a tendency to injure the plaintiff morally and professionally; but they also found that the words were not spoken of him in his business of an attorney. And for that reason the court ordered a nonsuit. Tindal, C. J. said, the words, though spoken of an attorney, do not touch him in his profession, any more than they would touch a person in any other trade or profession. In *Dole* v. *Van Rensselaer*, (1 *John. Cas.* 330,) the words were spoken of the plaintiff in his office of sheriff, and affected him in his official character.

Now what is this case? The words do not charge the plaintiff with doing any act whatever—either good or bad—as a justice of the peace. Nor do they impute to him the neglect or refusal to perform any duty incumbent upon him as such officer. Saying that " there is a combined company here to cheat strangers, and *'Squire* Van Tassel has a hand in it," does not impute this misconduct to him as a magistrate; but only as a man. " Squire " is merely a description of the person. It means no more than would be signified by the use of the plaintiff's baptismal name in the same place. In *Oakley* v. *Farrington*, the plaintiff was a justice of the peace, and the words were, *"'Squire* Oakley is a damned rogue;" and yet it was held that the action would not lie, because the words did not relate to his official character or conduct.

What official delinquency is charged upon the plaintiff? The words are, " I don't see why 'Squire Van Tassel did not tell me that the execution had not been returned in time, so that I could sue the constable and his bail." It can hardly be said that these words impute the neglect of any moral or social duty; for it is not charged that the plaintiff had ever been requested to give information on the subject, or that there had been any opportunity to give it. Indeed, it does not appear that the plaintiff had any information to impart. But if the words contain an implied censure on the plaintiff as a man, they do not touch him in his official character. They do not impute to him the neglect of any duty pertaining to, or imposed by his office. The word "'Squire" in this connection means no more than it did

when speaking of the "combined company to cheat strangers."
It is merely a *descriptio personæ.* I do not see how this action
can be maintained.

Judgment for defendant.