### RHODOLPHUS STEVENS *vs.* TIMOTHY HARTWELL.

In an action for slanderous words that are not actionable in themselves, the plaintiff cannot prove that he sustained special damage by means of the repetition, by a third person, of the words uttered by the defendant.

When a plaintiff, in an action for slanderous words, sets forth, in one count, the words which he alleges were spoken by the defendant, charging the plaintiff with a certain offence, and adds a count which only alleges that the defendant charged him with the same offence, and files a bill of the particulars of his cause of action on the second count, in which he gives notice that he shall rely, in support of that count, on the words set forth in the first count, he cannot give evidence of any other words spoken by the defendant, besides those which are thus set forth.

THE first count in the plaintiff's declaration alleged that the plaintiff, "for many years now last past, hath used, and yet uses, the trade, business and calling of a butcher, and in the same art, without cheating, selling bad meat, or any other crime, and by reason of his upright and honest dealings in his said business, hath gained himself great credit and esteem among his customers and neighbors; yet the said Hartwell, not ignorant of the premises, but contriving to injure said Stevens in his good name, and to hurt and traduce the plaintiff in his trade aforesaid, on the tenth day of March 1844, at Pepperell, in the county of Middlesex, in the presence and hearing of divers good citizens of this Commonwealth, openly and publicly spoke, uttered and published, of and concerning the said Stevens, the following feigned, false and scandalous words, to wit : ' Did you' (meaning one Samuel Miller) 'buy a hog of Stevens' (meaning the plaintiff) 'yesterday ?' ' Stevens' (meaning the plaintiff) 'had one,' (meaning a hog,)

'and it was sick, bad meat,' (meaning the meat of said hog was 'bad, diseased and corrupted,) 'and I' (meaning said Hartwell.) 'understood he' (meaning said Stevens) 'sold it to a carpenter at the north part of the town,' (meaning said Pepperell,) 'and you' (meaning said Miller) 'being a carpenter, and living at the north part of the town,' (meaning said Pepperell,) 'is the reason of my' (meaning said Hartwell's) 'making the inquiry of you,' (meaning the witness;) meaning thereby that said Stevens had sold a sick hog; by the speaking and publishing of said false and scandalous words, the plaintiff is injured, not only in his good name, but in his honest trade and dealings, in buying and selling meat, is egregiously damaged; and many of his fellow citizens, to wit," (naming thirteen men,) " with whom the plaintiff, before the speaking of the said false, scandalous and malicious words, had large dealings, from which he derived great advantage and profit, have since, and on account of the speaking of the said words, and for no other reason whatsoever, wholly refused to buy meat and provisions of the plaintiff," &c.

The second count averred that the defendant, in another discourse with divers other good citizens, on the said 10th of March 1844, " with the intention and for the purposes aforesaid, did falsely, maliciously, openly and publicly, charge the plaintiff with the crime of knowingly selling diseased, corrupted and unwholesome provisions, for meat, without making the same fully known to the buyer thereof, in the presence and hearing of those last mentioned citizens ; by means of the speaking of which said false, scandalous and defamatory words, and of the said false and scandalous charge, the plaintiff is further injured in his good name, character and reputation aforesaid, and is suspected to have acted unworthily, deceitfully and dishonestly, in his trade and business aforesaid, and has been rendered liable to be prosecuted and indicted for the crime aforesaid, and has likewise suffered great pain and distress of mind," &c.

The plaintiff filed the following specification of particulars. " To support the charge contained in the second or general

count, the plaintiff will offer to prove the words contained in the first count, and alleged to have been spoken by said Hartwell. The plaintiff will also prove a conversation had by the defendant with Gordon Robinson, on or about the 8th of April 1844, in presence of Josiah D. Whitney, the substance of which was, that the hog, sold by the plaintiff to the said Whitney, was sick and diseased."

The defendant filed the specification of defence, which follows: "If the said Stevens proves the words to have been spoken, or the charges to have been made, by the said Hartwell, as is alleged in said declaration, the said Hartwell, in his defence, will rely upon the truth of the words so proved to have been spoken, and upon the truth of the charges so proved to have been made, and will also rely upon the fact, that the words alleged to have been spoken, and charges alleged to have been made, were spoken and made, if spoken and made by said Hartwell, without malice, in a lawful and justifiable form and manner, for the furtherance of justice, and with good, legal and justifiable ends, and that the same did no manner of harm, injury or damage, to the said Stevens, in his character or business, in any form or respect whatever."

At the trial before *Hubbard*, J. the plaintiff called Samuel Miller as a witness, who gave the following testimony: "In the spring of 1844, I had a conversation with the defendant about killing a hog. It was Sunday noon, at the meeting-house. The defendant asked me if I bought a fresh hog of Stevens last night. I told him no. Then I asked him why. He said Stevens had one that was sick. He said he understood Stevens sold it to a carpenter at the north part of the town. I asked him if there was any trouble, or going to be, or any thing; and he said, you will hear more about it. I remember nothing more. He spoke very low. He said something about being imposed upon; but he spoke very low." The witness was then asked, by the plaintiff's counsel, if he told his brother, Jacob Miller, the substance of what the defendant had told him. This question was objected to by the defendant's counsel, on the ground that the damage to

the plaintiff must result directly from the words spoken, and not from the repetition of them by others, unless directed to be communicated. This question being put, as was admitted by the plaintiff's counsel, for the purpose of following it by evidence that the words were repeated by Jacob Miller and other persons, to the injury of the plaintiff, in the manner alleged in the plaintiff's declaration, the judge sustained the objection; and to this ruling the plaintiff excepted. The witness then testified, on cross-examination, as follows: "The defendant did not tell me to tell any one, nor did he authorize me to tell it to any one else. He said he did not know but what I had been imposed upon, and so he inquired."

Two other witnesses, called by the plaintiff, testified that they heard the conversation between the defendant and Samuel Miller, at the meeting-house in Pepperell, and that it was such as represented by said Miller, in his testimony. They also testified that the plaintiff's principal business was that of a butcher, and buying and selling meat.

It was proved or admitted that Benjamin Kendall sold a hog to the plaintiff, on the 9th of March 1844, the Saturday before the defendant's conversation with Samuel Miller; and that the plaintiff sold it, on the same day, to Josiah D. Whitney, a carpenter in the north part of Pepperell.

Gordon Robinson, a witness called by the plaintiff, testified that he heard Josiah D. Whitney ask the defendant if he knew any thing about a hog that the plaintiff bought of Benjamin Kendall; that the defendant said he did not know any thing about it; that Whitney said he thought he had been injured by the plaintiff, and he wanted to know the truth of the story; that the defendant then said, "we are all neighbors here together. I don't wish to have any thing to say about it;" that the defendant finally said, "all I know about it is what Kendall's boy told me. The boy told me, a short time before the hog was slaughtered, his father was going to kill the hog and throw it away. After the hog was slaughtered, the boy said the harslet was so bad that his father threw it away."

46 *

The said Robinson also testified that the defendant said that Kendall had offered to sell him the hog for ten dollars; that the defendant told the witness, on the 19th of January 1844, that the hog was sick; that the witness saw the hog on the 26th of said January, and it did not appear to be sick, but to be "thrifty and spry, like any other hog."

Upon this testimony, the plaintiff contended that the first count, if sustained by the evidence, would be sufficient to support the action, without proof of special damage; the words having been spoken with reference to his business. But the judge ruled, that the words alleged to have been spoken would not sustain that count, without the *averment* of special damage, and proof thereof. And as to the second count, the judge was of opinion that as the plaintiff had, by his specification of particulars, notified to the defendant that he should, in support thereof, offer to prove the words contained in the first count alleged to have been spoken by the defendant, he was bound by such specification, and could not be permitted, under the same, to give evidence to show that the defendant charged the plaintiff with *knowingly* selling diseased and corrupted provisions for meat, without making the same fully known to the buyer. And the judge intimated that he should so rule, before the plaintiff introduced the testimony of Gordon Robinson.

The plaintiff consented that a nonsuit should be entered, subject to the opinion of the whole court upon the rulings at the trial.

*Farley*, for the plaintiff. The plaintiff should have been allowed to prove the first count in the mode proposed by him. Otherwise, the most malicious and injurious slander may go unpunished.

As to the second count, the decision was erroneous, that the particulars filed by the plaintiff precluded him from proving the count in the manner attempted by him. *Pond* v. *Hartwell,* and *Allen* v. *Perkins,* 17 Pick. 269, 369. The defendant was sufficiently apprised of the particulars relied on to support the general charge. A butcher must be presumed

to know whether an animal is sick or healthy. Besides ; the objection came too late ; that is, not until after all the evidence was let in. *Robinson* v. *Wadsworth*, 8 Met. 67.

The first count was supported by the evidence. The charge was actionable, without alleging special damage. It is to be taken to be false, as it is not justified ; and malice is an inference from falsehood. Words that prejudice one in his profession or trade are actionable in themselves. Bac. Ab. Slander, B. 4. *Chaddock* v. *Briggs*, 13 Mass. 252, 253. There is not, indeed, in this count, any colloquium of the plaintiff's trade or business, but a colloquium is needless, when it necessarily appears, as in this case, that the words are spoken of a person in his office or business. 13 Mass. *ubi sup.* Bac. Ab. Slander, S. 3. *Hoyle* v. *Young*, 1 Wash. 150.

*Mellen & B. Russell*, for the defendant. The first count is insufficient, as it avers no special damage. And as none is averred, none can be proved. *Kelly* v. *Partington*, 5 Barn. & Adolph. 645. 2 Selw. N. P. (11th ed.) 1260. *Burnet* v. *Wells*, 12 Mod. 420. *Van Tassel* v. *Capron*, 1 Denio, 250. The words charged do not, *per se*, import any offence or immorality, and do not refer to the plaintiff's business, as there is no colloquium. Bul. N. P. 6, 7. 3 Steph. N. P. 2578. Nor do the words, that were proved, import any thing wrong, or any thing relating to the plaintiff's calling. 2 Saund. 307, *note* (1.) Com. Dig. Action on the Case for Defamation, G. 3. See also *Tassan* v. *Rogers*, 2 Salk. 693. *Rice* v. *Pidgeon*, Comb. 161. The words referred to a particular matter only, and are, for that reason, not actionable. *Tobias* v. *Harland*, 4 Wend. 537. The count is also bad for want of an averment that the defendant knowingly did the act charged upon him. *Hemmenway* v. *Woods*, 1 Pick. 524. *Sweetapple* v. *Jesse*, 2 Nev. & Man. 36. And even if the count had been good, the plaintiff could not have proved it in the mode attempted by him. When a plaintiff sues for damage sustained by words alleged to have been spoken by the defendant, that allegation is not supported by proof that the damage was caused by the repetition of the words by a

third person.  *Ward* v. *Weeks*, 4 Moore & Payne, 796, and 7 Bing. 211.  *Rutherford* v. *Evans*, 4 Car. & P. 74.  2 Leigh's N. P. 1359.  *Crain* v. *Petrie*, 6 Hill, 522.  *Vicars* v. *Wilcocks*, 8 East, 1.

As the plaintiff filed a bill of the particulars on which he should rely, in support of the second count, he was rightly confined, by the judge, to proof of those particulars.  That bill became a part of the declaration.  *Clark* v. *Munsell*, 6 Met. 373, and cases there cited.  *Holland* v. *Hopkins*, 3 Esp. R. 168, and 2 Bos. & Pul. 243.  *Wade* v. *Beasley*, 4 Esp. R. 7.  Besides ; the plaintiff's conversation with Robinson was too vague to be the ground of action.  *Olmsted* v. *Miller*, 1 Wend. 506.  *Fox* v. *Vanderbeck*, 5 Cow. 513.

*Robinson* v. *Wadsworth*, 8 Met. 67, was a case of specification of defence, and not of particulars of the plaintiff's cause of action ; and therefore the rule there applied is not applicable to the present case.

Wilde, J.  At the trial of this cause, two exceptions were taken to the rulings of the court ; and the question is, whether those rulings were correct.

The first count in the declaration alleges that the defendant had spoken, uttered and published certain false and scandalous words, in the declaration set forth, of and concerning the plaintiff, charging him with having sold a diseased hog ; and there is an averment that the plaintiff, who is a butcher, had suffered special damages by reason of the words thus spoken.

As there is no averment in this count, that the defendant charged the plaintiff with having knowingly sold the said diseased animal, this count cannot be maintained without proof of special damage.  There is no averment, in the count, that the words were spoken of the plaintiff in relation to his trade ; nor do the words import that they were so spoken. The words import a charge of selling a sick hog ; but it is not averred that the hog had been killed and the meat sold by the plaintiff.  The words therefore are not actionable without proof of special damage.  Com. Dig. Action on the Case for

Defamation, G. 3. 2 Saund. 307, *note* (1.) *Smedly* v. *Heath*, 1 Lev. 250. *Van Tassel* v. *Capron*, 1 Denio, 250. 1 Stark. on Slander, (Wendell's ed.) 117. To prove such special damage, Samuel Miller, one of the plaintiff's witnesses, to whom the words alleged were spoken by the defendant, was asked if he had told his brother, Jacob Miller, the substance of what the defendant had told him. This question was objected to by the defendant's counsel; it being admitted that the question was asked for the purpose of following it by evidence to prove that the words were repeated by Jacob Miller, whereby the plaintiff suffered the special damage, as alleged in the declaration. This objection was sustained by the learned judge who tried the case; and to this ruling the plaintiff's counsel excepted.

This ruling is fully sustained by the case of *Ward* v. *Weeks*, 4 Moore & Payne, 796, and 7 Bing. 211, and the other cases cited by the defendant's counsel. That these decisions are conformable to the settled English doctrine is not controverted; but it has been urged that the doctrine is unreasonable, as no action would lie against the witness, or the said Jacob Miller, for repeating the slanderous words, if they, at the time, named the original author. This argument is founded on one of the resolutions in the *Earl of Northampton's case*, 12 Co. 134, where it is laid down as a general proposition, that "if J. S. publish that he hath heard J. N. say, that J. G. was a traitor or thief; in an action of the case, if the truth be such, he may justify." This was an extrajudicial resolution, and if it is to be understood as an unqualified proposition, that in all cases, and under all circumstances, the repetition of slanderous words, stating at the time the name of the author, is justifiable, it has been overruled by the court of king's bench, in *McPherson* v. *Daniels*, 10 Barn. & Cres. 263, and 5 Man. & Ryl. 251, and by the court of common pleas, in *Ward* v. *Weeks*, before cited. In the former case, it was decided, that in an action of slander it is not a sufficient defence to show that the defendant heard the slander from another, and named the person at the time,

without showing that he believed it to be true, and that he spoke the words on a justifiable occasion. The reasons on which this decision is founded are cogent and satisfactory. The repetition of slander is not to be encouraged, and is not to be justified by merely naming the person who first uttered it. Such repetition extends the slander, and gives it additional credit. It is therefore unlawful, unless believed to be true, and uttered on a justifiable occasion. We are therefore of opinion that the evidence offered at the trial would not have proved any special damage caused by the defendant, who is only answerable for his own wrongful acts, and not for the unauthorized and wrongful acts of another party. The plaintiff's remedy, according to the evidence offered at the trial, is against the party who was the immediate cause of the special damage alleged in the declaration.

In relation to the ruling as to the second count, we are of opinion that the plaintiff was limited and bound by his specification, and could not be allowed to prove that the plaintiff was charged by the defendant with knowingly selling diseased and corrupted provisions. The words proved import no such charge ; nor could he be permitted to offer evidence, other than that specified, to prove it. He should have specified substantially what he intended to prove in support of the general charge ; and the plaintiff's knowledge of the diseased condition of the animal sold is the essence of the charge.

If by mistake the specification was defective, the plaintiff should have moved for liberty to amend it, instead of excepting to the ruling of the court, which was clearly correct.

*Exceptions overruled.*