## KINNEY _vs._ NASH.

In the action of slander, where the words spoken derive their actionable quality from facts and circumstances extrinsic the words themselves, such facts and circumstances must be proved or the plaintiff can not recover.

Accordingly, in an action for slanderous words alledged in the declaration to have been spoken of the plaintiff as a constable, and imputing to him misconduct in his proceedings under a bench warrant, placed in his hands for the arrest of an offender who had been indicted, and the words proved were not slanderous except as connected with the indictment and bench warrant, and the plaintiff failed to prove the warrant; _held,_ that he could not recover.

Words not actionable in themselves do not become so when spoken of one holding a public office, or engaged in a profession or trade, unless they touch him in his office, profession or trade.

An action for slanderous words imputing to the plaintiff misconduct _as a constable,_ is not sustained by proving words imputing misconduct to him as agent of the executive of this state for the arrest, in another state, of a fugitive from justice.

APPEAL from the supreme court, where Kinney sued Nash for uttering slanderous words. The defendant pleaded the general issue and gave notice of special matter. At the trial before PRATT, J. in August, 1848, the plaintiff had a verdict for $127, which the supreme court sitting in the sixth district refused to set aside, and the defendant, after judgment against him, appealed to this court. The case is stated in the opinion of JEWETT, C. J.

_S. Beardsley,_ for appellant.

_J. P. Whittemore,_ for respondent.

JEWETT, Ch. J. The principle is well settled that to maintain an action for words spoken, the words must either have produced a temporal loss to the plaintiff, by reason of special damage sustained from their being spoken, or they must convey a charge of some act criminal in itself, and indictable as such, and subjecting the party to an infamous punishment, or they must impute some indictable offence, involving moral turpitude,

or the breach of some public trust, or with some matter in relation to his particular trade or vocation, and which, if true, would render him unworthy of employment. (2 *Kent's Com.* 15, 5th ed. ; *Brooker* v. *Coffin,* 5 *John.* 188 ; *Van Ness* v. *Hamilton,* 19 *id.* 367 ; *McCuen* v. *Ludlum,* 2 *Harr. N. J. Rep.* 12; *Dole* v. *Van Rensselaer,* 1 *John. Cas.* 330.)

It is also a general rule that "words not actionable in themselves, are not actionable when spoken of one in an office, profession or trade, *unless they touch him in his office,*" &c. (*Com. Dig. Action on the Case for Defamation, D.* 27 ; *Doyley* v. *Roberts,* 2 *Bing. N. C.* 835 ; *Van Tassel* v. *Capron,* 1 *Denio,* 253.) It is not enough that the words may tend to injure him in his office or calling, unless they are spoken of him in his official or business character. In *Oakley* v. *Farrington,* (1 *John. Cas.* 129,) the plaintiff was a justice of the peace, and the words were "Squire Oakley is a damned rogue." The plaintiff was nonsuited on the ground, that although the words were spoken of a magistrate, they had no relation to his official character or conduct. In *Ayre* v. *Craven,* (2 *Ad. & Ellis,* 2,) the words were laid to have been spoken of the plaintiff in his profession as a physician, and imputed adultery. After verdict for the plaintiff, the judgment was arrested. The court said, that after full examination of the authorities, they thought the declaration ought not merely to state that such scandalous conduct was imputed to the plaintiff in his profession, but also to set forth in what manner it was connected by the speaker with that profession. In *Dole* v. *Van Rensselaer,* (*supra,*) the words were spoken of the plaintiff in his office of sheriff, and affected him in his official character.

The declaration in this case commences with prefatory inducements of the plaintiff's antecedent good character, and of his being a constable of the town of Hamilton in the county of Madison, and of having faithfully exercised and performed the duties of that office with honesty, &c. and of his innocence of the offences and misconduct imputed to him by the defendant; that an indictment for felony had been found and preferred in the court of general sessions of the peace in that county against

one Henry Thomas, for the crime of burglary and larceny;
that a warrant, commonly called a bench warrant, had been
regularly issued out of said court and delivered to the plaintiff,
commanding him as such constable, in the name of the people,
&c. to arrest said Thomas and bring him before said court to
answer to the indictment; and that the plaintiff, in pursuance
thereof, as such constable, used all reasonable efforts and due
diligence in seeking for, and endeavoring to arrest said Thomas.
It then states the defendant's malicious intention to injure the
plaintiff as such constable, and to cause it to be suspected, &c.
that the plaintiff was guilty of being bribed not to perform the
duties of his said office of constable, and otherwise of willfully
and corruptly neglecting to discharge the duties of said office,
&c. to wit, on, &c. at, &c. in a certain discourse which the defen-
dant then and there had, of and concerning the said plaintiff *in
the exercise of the duties of his said office of constable of the town
of Hamilton and county of Madison aforesaid, and of and con-
cerning the proceedings of the said plaintiff as such constable
aforesaid, under and by virtue of the warrant aforesaid,* in the
presence and hearing of the said last mentioned citizens, these
false, &c. and defamatory words, that is to say.   The words
spoken are then set out with innuendos to connect the words
with the introductory averments; the substance of which are,
that the defendant declared that he would not vote for the plain-
tiff for the office of constable of said town, on the ground that
he had been out west to arrest Thomas upon said bench war-
rant, and had not arrested him, although he had ample oppor-
tunity to arrest him, or that he had arrested him and had let
him go, for some pecuniary or other consideration paid him by
Thomas.   It is then averred that previous to, and at the time
of publishing the words above mentioned by the defendant, the
said persons in whose presence and hearing the words were
spoken by the defendant, knew and understood that said
Thomas, spoken of by the defendant and referred to in his said
discourse, was a person indicted for a felony committed in the
town of Hamilton; and that the plaintiff, as constable as afore-
said, went in pursuit of said Thomas, having in his possession

a warrant, commonly called a bench warrant, commanding him as such constable to arrest said Thomas, and that said plaintiff as such constable went in pursuit of said Thomas for the purpose of arresting him, but unavoidably failed to do so; all which the defendant well knew at the time he spoke and published said words in reference to the proceedings of the plaintiff under and by virtue of the said bench warrant, in relation to that transaction, and the said citizens so understood the defendant.

The declaration contains two other counts for speaking words in substance like the words contained in the first count, which, for the purpose of disposing of this case it will not be necessary to refer to. The evidence relied on for a recovery by the plaintiff is as follows:

First. It was admitted that the plaintiff was duly elected and sworn, and acted as a constable of the town of Hamilton and county of Madison, from March, 1845 till March, 1848; that Henry Thomas was indicted for burglary and larceny in the county of Madison, in this state; and that when the plaintiff, as constable of the town of Hamilton, went to Wisconsin to arrest Henry Thomas therefor, he as such constable was furnished with the requisite papers, and duly authorized to arrest said Thomas, as such constable.

Mr. Lord, a witness, testified that he resided in Hamilton, that he went to vote on town meeting day in 1847, when the defendant asked him if he wanted some votes. He said he erased Kinney's name, and had some reasons for it; that Kinney had been to arrest Thomas and arrested him and let him go; that he did not vote for any such man as that.

Mr. Bacon, a witness, testified that at Hamilton, town meeting day, in the spring of 1847, defendant told him that he would not vote for such a man as Tom Kinney, for a man that *would be bribed* was not fit for office. That the defendant commenced the conversation. He asked witness if he had voted. He said that he would not vote for such a man as Tom Kinney. That a man that would be bribed was not fit for office. Witness

Kinney *v.* Nash.

asked him if it was a fact, and he said it was; he could prove it by Deacon Burchard.

Mr. Moray, a witness, testified that on the morning of caucus, or town meeting day of 1847, but which he did not know, but thought it was town meeting morning, the defendant was talking about Kinney going out west to arrest Thomas, and he heard defendant say he thought that they ought not to support such a man as Tom, for he went out west and took him, and was bought off. The defendant proceeded to tell what Deacon Burchard said, about his going west. That Kinney had been out west, and arrested Thomas, and staid all night with him and let him go; and a man that would do that, he would not vote for.

Mr. Murdock, a witness, testified that in the spring of 1847, on caucus day, he was preparing votes for the caucus. The defendant came in and asked who he was preparing votes for, witness replied for Thomas H. Kinney. Defendant said he would not vote for Kinney, for he had been out west and arrested Thomas, and staid all night with him and let him go, and a man that would do that he would not vote for. He said the story came from Burchard, that he had been to see Burchard, and it came from too good authority for him to disbelieve it. That the defendant was a voter in said town, and had been for several years.

Mr. Green, a witness for the plaintiff, testified that he was acquainted with the parties; that he had heard the defendant say what he said he had learned. It was on the first Tuesday in March, 1847, on the day of town meeting in Hamilton. He had heard there was a story in circulation and went to the defendant to learn what the story was. He found him at Church's tavern. He told the defendant that he had heard that there were stories in circulation about the plaintiff, and asked him to state what the story was. The defendant said that he had been told by Deacon Burchard that he had been to Wisconsin, and said that certain persons in Wisconsin laughed at him about Tom Kinney, who came there to arrest Henry Thomas. They said that they thought they had a pretty constable in this town;

that Burchard told them that he did not belong to the town that Kinney did. That Burchard said that they told him that Kinney went into the brickyard where Thomas was, and held a conversation for some time with Thomas, and afterwards came off and left Thomas. That Burchard said it was a serious charge, and asked them if it could be proved. That they replied, they guessed there was plenty of proof about there. Witness testified that Thomas was the man indicted for burglary and larceny. That Kinney was a candidate for constable that day, in Hamilton.

Mr. White, a witness for plaintiff, testified that a short time after town meeting he told defendant that Kinney was going to sue him, that he had got out a writ for him. That the defendant said he might sue and be d—d, he could prove all he had said.

Upon this evidence the plaintiff rested, and a motion was made that the plaintiff should be nonsuited—1st. On the ground that there was a variance between the words proved to have been spoken by the defendant, and those charged and laid in the declaration. 2d. Because the words were spoken in relation to a particular and known transaction. 3d. Because the words were spoken on an occasion that repels the presumption of malice, and no express malice was proved. 4th. Because the words spoken were a privileged communication made by the defendant in the exercise of his duty as a citizen and elector of the town of Hamilton. 5th. Because the facts proved were insufficient to maintain the action. The motion was denied, and the defendant excepted.

The words spoken, as alledged in this case, derive their actionable quality from their relation to facts and circumstances extrinsic of the words themselves. In such case, the plaintiff must, as he has done here, by way of introduction or inducement, state those facts and circumstances; then aver that the words spoken related to those facts and circumstances, by laying a *colloquium,* as it is called; and lastly, by innuendos connect such of the words as need explanation with the facts and circumstances previously stated in the declaration. This rule

in its several parts is clearly and concisely illustrated by De Grey, C. J. in delivering the opinion of the court in the case of *Rex* v. *Horne*, (*Cowp.* 672.) " In an action upon the case against a man for saying of another ' he has burnt my barn,' the plaintiff cannot, by way of *innuendo* say, ' meaning his barn full of corn ;' because that is not an explanation of what is said before, but an addition to it. But if, in the introduction, it had been averred that the defendant had a barn full of corn, and that, in a discourse about that barn, the defendant had spoken the words charged, of the plaintiff, an *innuendo* of its being a barn full of corn would be good : for by coupling the *innuendo* in the words with the introductory averment, ' his barn full of corn,' it would have made it complete. Here the extrinsic fact that the defendant had a barn full of corn is the introduction or inducement ; the allegation that the words were uttered in a conversation relating to that barn, is the *colloquium :* and the explanation that the words thus spoken were applied to that barn full of corn, is the *innuendo.*" (*See Van Vechten* v. *Hopkins,* 5 *John.* 221 ; *Bloss* v. *Toby,* 2 *Pick.* 320.) These averments, which are necessary, by way of inducement, to the action, must be proved. (2 *Phil. Ev. ed.* 1843, *p.* 240 ; 3 *Steph. N. P.* 2572 ; *Sellers* v. *Till,* 4 *Barn. & Cress.* 655.)

To do this in this case, it was necessary to prove that, at the time alluded to, the plaintiff was a constable of the town of Hamilton ; that Thomas had been indicted at the place and for the crime alledged ; that a bench warrant for the arrest of Thomas for that cause had been issued and delivered to the plaintiff to execute as such constable. The evidence does not go so far as to show that a bench warrant had been issued for the arrest of Thomas, or delivered to the plaintiff as a constable to execute. All that there is, on this point, is contained in the stipulation for the admission of certain facts upon the trial, as follows: " That when the plaintiff, as constable of the town of Hamilton, went to Wisconsin to arrest the said Henry Thomas therefor, he, the said plaintiff, as such constable, was furnished with all the requisite papers, and duly authorized to arrest said Thomas as constable." If the admission is not in itself wholly

insensible, it can mean nothing more than that at the time the plaintiff was in the state of Wisconsin for the purpose of procuring the arrest of Thomas and to bring him to the county of Madison to answer said indictment, that he went there as the agent of the executive authority of this state to demand Thomas of the executive authority of Wisconsin, as a fugitive from justice, and as such was furnished with a copy of the indictment found against Thomas, certified as authentic by the governor of this state. (1 *Story's L. U. S.* 284.) Or at most, it proves that he acted in Wisconsin under some authority derived from the governor of that state, to arrest Thomas after such demand had been made. He could not, in the nature of the case, have acted as a constable of Hamilton, or had any authority as such, to make such arrest in Wisconsin, either under a bench warrant or other process issued by any court in this state. Wisconsin is situated without the jurisdiction of our courts, its process, or ministerial officers.

I can not think that the fact that a bench warrant had been issued and delivered to the plaintiff to execute as a constable of Hamilton, for the arrest of Thomas, is proved by the stipulation, or that the admission which was made tends to prove it. If it be admitted that the words " he went west to arrest Thomas, and arrested him and let him go," &c. are equivocal as to the place where the defendant charged the arrest to have been made, or the omission to arrest took place, whether in this state or Wisconsin, it was no ground to submit the cause to the jury; for if there was no evidence of the issuing and delivery of a bench warrant to the plaintiff, in whatever place the jury should find from the evidence the offence or misconduct was charged to have occurred, the plaintiff could not recover in the absence of evidence of the issuing and delivery of the warrant. I am therefore of opinion that there was a failure of evidence to authorize the jury to find a verdict for the plaintiff; and that upon that ground the judge at the trial erred in refusing to grant the motion for a nonsuit. The judgment must be reversed, and a new trial granted—costs to abide the event.

Ordered accordingly.