LEVI M. STEWART *vs.* EUGENE M. WILSON and another.

March 28, 1877.

Libel—Complaint—Extrinsic Circumstances.—In an action of libel for the publication of matter the actionable quality or character of which can only be

shown by proof of extrinsic facts and circumstances, such facts and circumstances must be properly averred in the complaint.

**Same—General Charge of Perjury.**—No action can be maintained upon the publication of a writing charging perjury generally, or in such a general and impersonal way as to be incapable of being understood as having any particular personal application and meaning.

**Same—Complaint, where Alleged Libel is Ambiguous.**—Where matter charged as libellous is so ambiguous upon its face as to require proof of extrinsic facts to make such its alleged meaning and application plain and intelligible, such facts must be stated by proper averments in the complaint.

**Same—Rule for Construing Alleged Libel.**—In construing the language of an alleged libel, as set forth in a complaint, courts must give it its obvious and natural meaning, unless the pleader avers it to have been used and understood in a different sense.

Appeal by plaintiff from a judgment of the court of common pleas of Hennepin county, entered pursuant to an order of *Young*, J., made at the trial, dismissing the case for failure of the complaint to state a cause of action.

*D. A. Secombe*, for appellant.

*Wilson & Lawrence*, for respondents.

CORNELL, J. This action was dismissed in the court below on the ground that the complaint did not state facts sufficient to constitute a cause of action, to which ruling the plaintiff excepted, and the case is now before us, upon appeal from the judgment, to review this alleged error.

The article, the publication of which is claimed as a libel, contains what purports to be a copy of a duly verified answer, put in by defendant Wilson, to a complaint in an action in the court of common pleas of Hennepin county, wherein Levi M. Stewart is plaintiff, and the said Eugene M. Wilson, Edgar Nash, and several others therein named, are defendants, and certain comments thereon by the author of the article. The complaint herein sets out the article in full, without any innuendoes. It designates the article as a certain libel; avers that the defendants caused it to be published, in a certain newspaper called the *Minneapolis Daily Tribune*, of and concerning the plaintiff; that the publication was false, and that the complaint in the therein-

entitled action (referring to that given in said answer) was duly verified by the plaintiff. The answer, which forms part of the alleged libellous article, contains the following : " And defendant denies that he in any manner counselled, aided, or abetted, maliciously or otherwise, in procuring the committing of the acts by plaintiff complained of, and says all the allegations of the same, as by plaintiff made, are false and untrue, as plaintiff well knew when he made them."

The point is made by plaintiff, in this court, that this portion of the answer—considered in connection with the fact, averred in the complaint herein, that the complaint in the action in which said answer was interposed was verified by plaintiff—contains a direct charge of perjury, as well as malicious prosecution, by plaintiff, and that " this charge, though made in a judicial proceeding, is not privileged, for the reason that it was immaterial, irrelevant, and impertinent."

It is conceded that this answer was interposed to a complaint in a regular judicial proceeding, and that the actionable character of the statements depends entirely upon their materiality and relevancy in reference to the material averments of such complaint—the cause of action therein stated. The complaint in this action does not disclose, by way of inducement or otherwise, what that cause of action or complaint was, nor the character of its averments. Hence it does not appear whether the denials and affirmations contained in the answer were pertinent and material or not. Their actionable character can only be shown by proof of extrinsic facts, which the pleader should have properly alleged in his complaint. This point, therefore, is not well taken. 1 Starkie on Slander, 391 ; *Kinney* v. *Nash*, 3 N. Y. 177, 182 ; Moak's Van Santvoord, 210.

2. Plaintiff also objects to the decision of the court, as error, that " the publication also, by indirection, charges the plaintiff with perjury *eo nomine*." This is based upon

the following portion of the publication : "As Mr. Wilson has sworn to this answer, here is a good chance for the 'deacon' to bring a complaint against him for perjury. We have not the slightest doubt but there is a great deal of perjury in these numerous cases, and it ought to be shown up. We have no idea, however, that Mr. Wilson is tainted with it in the slightest."

In determining the application and meaning of this language, both as respects the intention of the author and the sense in which it might reasonably be understood by the public, the complaint furnishes no aid, by the use of any innuendo, matter of inducement, colloquium, or averment of any kind, save the general averment which charges the whole article as "a certain libel" published of and concerning the plaintiff; and, inasmuch as many portions of the article clearly refer to other parties than the plaintiff, and have no possible reference to him, it may well be doubted whether the court would be warranted, upon this allegation alone, in construing these passages, thus ambiguous both in their meaning and application, as having any reference to the plaintiff.

However this may be, the very nature of a libel requires that the writing claimed to be such should reflect injuriously upon some person, and be susceptible of some personal application, so that it is apparent that the party alluded to, or to whom the allusion is claimed to be made, may, either actually or presumably, suffer some injury or damage from its publication. Hence it must appear, either upon the face of the alleged libel or by reference to some extrinsic fact or circumstance, that it is capable of being so understood by some one, and in the offensive sense attributed to it ; for it is quite clear that no one could be prejudiced by the publication of an article, the alleged offensive meaning and application of which it would be impossible for any one to apprehend. See Townshend on Slander and Libel, §§ 96, 126, 131, 133, 134, 142, 308, 310, and authorities cited in

notes; 1 Starkie on Slander, 44, 391; *Sumner* v. *Buel*, 12 John. 475. If the existence and knowledge of any extrinsic fact or circumstance are necessary to such understanding on the part of the public, or by any one, it is well settled that they must be both pleaded and proved. *Kinney* v. *Nash*, 3 N. Y. 177, 182; *Caldwell* v. *Raymond*, 2 Abb. Pr. 193.

Unaided, therefore, in this case, by the knowledge of any fact outside of the alleged libel, and giving to its language its natural and ordinary meaning, as the court must, inasmuch as the pleader makes no averment that it was used or understood in any different sense, (Townshend on Slander and Libel, § 133, note 1, and authorities therein cited,) it is impossible to construe it as imputing to the plaintiff the crime of perjury. The plain and ordinary import of the first sentence is an affirmation that a person, designated by the title of " deacon," (without any innuendo indicating its reference,) has a good chance to bring a complaint against Mr. Wilson for perjury, because the latter had sworn to an answer interposed to a complaint in an action, which, so far as appears upon the face of the article, may have been unverified. The next sentence—" We have not the slightest doubt but there is a good deal of perjury in these numerous cases, and it ought to be shown up "—in and of itself imputes perjury to no particular person. It is not stated what " these numerous cases " were, nor who were the parties thereto, though it may fairly be inferred, perhaps, from the article, that one of them was that indicated by the title to the answer therein contained and published. But it nowhere appears from the article that plaintiff ever made any affidavit, or was sworn, in that action; nor is the existence or knowledge of any fact averred in the complaint from which any one, in reading the article, could reasonably infer that plaintiff was intended, by this paragraph, to be charged with the crime of perjury. As respects any personal allusion, it is as indefinite and meaningless as

a general statement that "a great deal of perjury is committed in most or many litigated cases, and it ought to be shown up." No one would be warranted in appropriating such a remark to himself, or in supposing it to have been intended for another. To render a statement or remark of this general character actionable, it must appear to have been used in other than an impersonal sense, and under circumstances raising a reasonable presumption that it had some particular personal allusion and meaning. In this case the article itself discloses no such circumstances, and, none having been pleaded, the complaint in this regard is fatally defective.

Giving to the last sentence its ordinary meaning and signification, it simply expresses a belief that "Mr. Wilson is not tainted with it (perjury) in the slightest." If this was used, and intended to be understood, in any different sense, it should have been so alleged in the complaint. In construing the language of a libel, courts adopt the obvious meaning and ordinary and usual signification of terms, unless the pleader avers another and a different sense and meaning.

Judgment affirmed.