he predicates his right to recover on the ground that the railroad company owes a duty to the public to give some signal, by the ringing of the bell or the sounding of the whistle, when approaching a nongrade crossing. It seems to me that, by legislative construction, as the statute and decisions now stand, the defendant owed no duty to the plaintiff to give any warning of the approach of the train, unless by observation its servants found that the plaintiff was placed in a dangerous position; and then the defendant might be bound to use care to avoid the accident, if possible to do so. With knowledge of the overcrossing, it was the duty of the plaintiff to satisfy himself that he might cross in safety. Had the injury occurred from the wanton or unnecessary blowing of the whistle, an unusual or unnecessary noise of the train, or from some affirmative act of negligence chargeable to the defendant, a different proposition might be presented, raising a question of fact for the jury. Schermerhorn v. Railroad Co., 33 App. Div. 17, 53 N. Y. Supp. 279.

The demurrer must therefore be sustained, with leave to the plaintiff to amend his complaint within 20 days, on payment to the defendant of the costs, to be taxed by the clerk of Chenango county, on notice.

---

(51 App. Div. 2.)

### O'LEARY v. NEW YORK NEWS PUB. CO.

(Supreme Court, Appellate Division, Second Department.   April 24, 1900.)

LIBEL—WORDS LIBELOUS PER SE.
　　A newspaper article describing what purported to be a scene between a justice of peace and a prisoner, in which the justice, angered at the prisoner's disrespect, left the bench and committed a violent assault on the prisoner, was libelous per se.

Appeal from trial term, Nassau county.

Action by Denis O'Leary against the New York News Publishing Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Charles Lex Brooke, for appellant.
Delos McCurdy, for respondent.

WILLARD BARTLETT, J.  This is an action for libel. The plaintiff is a justice of the peace in the town of North Hempstead. The publication of which he complains was an article in the New York Daily News which purported to describe an occurrence in the plaintiff's court upon the arraignment of one Michael O'Brien, a farm laborer, who "had given the constable several rough and tumble fights on the way to the court." The article stated, in substance, that, when arraigned before Justice O'Leary, O'Brien said, "I don't want any business with the like of you," and started to leave the room; that thereupon the justice told him to sit down, whereupon O'Brien stuck out his tongue in derision, and the justice, leaving the

bench, grabbed him by the back of the neck. The remainder of the article read as follows:

"In the first round the prisoner wheeled around and landed on the judge's jaw, causing him to see stars; but the judge was game, and returned with vigor, giving his opponent a black eye. In the second round the judge sent O'Brien reeling across a bench, and the spectators expressed their approval of the masterly way in which the court conducted his case. Then the judge sent O'Brien against the stove, which upset, filling his opponent's eyes with ashes. 'Murder! murder!' cried the prisoner. 'He's put my eyes out. I've got enough. For God's sake, let me go.' Then the judge ascended the bench, while the constable picked up the prisoner and led him to the bar, rubbing his eyes with a big bandana handkerchief. 'I'll fine you $10,' remarked the judge between short breaths, 'and, if you are brought before me again, I hope you will know enough to act in a decent manner.' O'Brien paid the fine, and promised to curb his temper in the future."

Upon the conclusion of the evidence for the plaintiff the learned counsel for the defendant moved for a dismissal of the complaint upon the grounds (1) that the article was not libelous per se; (2) that there was no evidence that it was published; and (3) that there was no evidence that it was published with malice. As the answer admitted the publication of an article similar to the one set out in the complaint, and which the defendant alleged that it believed to be the same article, the motion could hardly have been granted for want of proof that the article was published. Nor could the motion have been granted on the ground that there was no evidence that it was published with malice, unless the court held that it was not libelous per se; for, if it was libelous per se, its defamatory character would import malice. It is plain, therefore, that the action of the learned trial judge in dismissing the complaint must have been based upon the view that the language of the article was not actionable in and of itself. With this conclusion we are unable to agree. The publication charged the plaintiff, while in the exercise of his functions as a justice of the peace, with having committed an assault upon a prisoner who stood arraigned before him. The fact that the prisoner had treated him with derision was no justification for a personal attack by the plaintiff, nor was such attack justified or excused by the fact that the prisoner started to leave the room. According to the article, the constable who had brought the prisoner to court was present throughout the entire altercation, and nothing is stated in the article disclosing the slightest necessity of any effort on the part of the justice to detain the prisoner. On the contrary, the action attributed to the plaintiff by this publication, if not palliated by facts which do not appear in the published statement, would warrant the removal of the justice from office. In slander, it is a general rule that words not actionable in themselves are not actionable when uttered of one in an office, unless they touch him in his office. Kinney v. Nash, 3 N. Y. 177. This rule is invoked in behalf of the respondent in the present action, although the defamatory words complained of here were in writing. Assuming that it applies to libel as well as slander, there are two reasons why it cannot aid the defendant here: One is that the words published are actionable of themselves, as relating to the plaintiff in his individual as distinguished from his official char-

acter, for the reason that they charge him with an offense against the criminal law, to wit, an assault. The other is that they do "touch him in his office," and, if true, would manifest his unfitness to hold it. We think that the language of the article published by the defendant was actionable per se, and that it was error to dismiss the complaint.

Judgment reversed, and new trial granted; costs to abide the event. All concur.