**Donna W. SCHUSTER and Donald E. Hanson, Plaintiffs,**

v.

**U. S. NEWS & WORLD REPORT, INC. and Time, Inc., Defendants.**

Civ. No. 4–78–251.

United States District Court, D. Minnesota, Fourth Division.

Nov. 13, 1978.

James Malcolm Williams, Minneapolis, Minn., for plaintiffs.

Peter S. Hendrixson, Minneapolis, Minn., for defendant U. S. News and World Report, Inc.

John D. French and John P. Borger, Minneapolis, Minn., for defendant Time, Inc.

MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

In this libel action, based upon Minnesota law, each defendant moves for summary judgment on the ground that the allegedly defamatory statements are not of and concerning plaintiffs. Defendant Time, Inc. also relies on the privilege conferred on accurate reports of official proceedings. A hearing on defendants' motions was held on October 18, 1978. Based upon the files and records in this cause, the affidavits and exhibits submitted by the parties, and the memoranda and argument of counsel, the Court grants summary judgment in favor of each defendant.

Defendant Time, Inc. published in the June 7, 1976, issue of *Time* magazine an article dealing with the federal government's efforts to halt distribution of laetrile. "Laetrile Crackdown," *Time,* June 7, 1976, at 60. The efficacy of laetrile as a cure for cancer has been the subject of controversy. The drug is banned by the Food and Drug Administration in this country, and on May 16, 1976, a federal grand jury in San Diego returned an indictment against 19 persons charging a conspiracy to smuggle laetrile into the United States. The *Time* article described the indictment in some detail and identified by name four of the individuals who were indicted. Plaintiffs, who were among those indicted, were not mentioned by name. The article's portrayal of laetrile distributors and of the persons indicted in San Diego led plaintiffs to sue Time, Inc. for libel. (See, Complaint, Count Two)

Defendant U.S. News & World Report, Inc. published in its June 21, 1976, issue an article dealing with "quack cures" for cancer, arthritis, and weight problems. "What the Health Quacks Are Peddling Now," *U.S. News & World Report,* June 21, 1976, at 45. Like the *Time* piece, the article focused on the federal government's efforts to crack down on distributors of laetrile. The indictment returned in San Diego was mentioned, but it was the article's portrayal of laetrile distributors which led plaintiffs, who were again not identified by name, to

sue U.S. News & World Report, Inc. for libel. (See, Complaint, Count One)

Plaintiffs each have affied that some readers of the articles understood them to be about plaintiffs, to the damage of their personal and professional reputations. Plaintiffs also contend there is a need for additional discovery[1] before the questions of law raised by defendants' motions could be ripe for summary resolution. Yet it cannot be said that defendants have moved with undue haste. See, Fed.R.Civ.P. 56(b). Nor do plaintiffs rely on the provisions of Fed.R.Civ.P. 56(f), which permits continuance of a motion for summary judgment upon an affidavit by the opposing party that he cannot for reasons stated muster affidavits essential to his opposition. Plaintiffs' counsel indicated at oral argument that the Court does not have sufficient information as to the nature of plaintiffs' roles in the laetrile controversy to assess whether the allegedly defamatory articles were of and concerning them. Plaintiff Schuster has affied, however, that she "was nationally and internationally known as a strong advocate of the use of natural foods such as . . . laetrile . . . [and] was the recognized leader in the struggle against vested commercial interests controlling the Food and Drug Administration and American Medical Association." (Schuster affid., p. 1) In view of this affidavit, the Court does not believe that further discovery would prove enlightening. In the procedural posture of this case, all questions and inferences of fact are to be viewed in the light most favorable to the non-moving party. E. g., *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Jackson v. Star Sprinkler Corp.,* 575 F.2d 1223, 1226 (8th Cir. 1978).

■■■■ Summary judgment is proper only if no genuine issue of material fact exists. While always an extreme procedure, summary judgment is more apt to be appropriate in a libel case where considerations of constitutional freedoms arise. To permit a meritless action to proceed beyond the pleading stage to trial would further chill publishers and speakers in the exercise of their first-amendment rights. E. g., *Anderson v. Stanco Sports Library, Inc.,* 542 F.2d 638, 641 (4th Cir. 1976); *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 35, 365 F.2d 965, 968 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

A statement is defamatory only if it concerns the plaintiff:

> The very nature of a libel requires that the writing claimed to be such should reflect injuriously upon some person, and be susceptible of some personal application, so that it is apparent that the party alluded to, or to whom the allusion is claimed to be made, may, either actually or presumably, suffer some injury or damage from its publication.

*Stewart v. Wilson,* 23 Minn. 449, 452 (1877); *accord, Brill v. Minnesota Mines, Inc.,* 200 Minn. 454, 458, 274 N.W. 631, 633 (1937).

The instant case presents the question not whether ambiguous derogatory remarks refer to a particular unnamed individual,[2] but whether alleged defamation of a group attaches stigma to a member of the group. Four Minnesota cases have dealt with the actionability of group libel. Three authorized recovery for defamation of a small group, the other found the group too large to allow stigmatization of its members.

In *Fullerton v. Thompson,* 123 Minn. 136, 143 N.W. 260 (1913), the St. Paul Dispatch published an article questioning the use of funds by the state board of medical examiners. Plaintiff was one of nine members of the board, each of whom was identified in the article. Defendants argued that the accusation was against the board and that the plaintiff individually had no cause of action. The Supreme Court dispatched the argument with the following paragraph:

---

1. As of the date of argument, both defendants had answered plaintiffs' initial interrogatories.

2. An article need not name the plaintiff "where . . . . [it] contains reference to matters of description or to facts and circumstances from which others reading . . . [it] may know the plaintiff was intended." *Dressel v. Shippman,* 57 Minn. 23, 25, 58 N.W. 684 (1894).

The point is made that the charges of misconduct relate to the board as such, and not to any individual member thereof. It is said that plaintiff may have opposed the action of the board in respect to the disposition of these fees. The contention is without merit. The publication conveys the meaning clearly that each member of the board participated in whatever was done with the fees collected from physicians moving into this state and licensed to practice here by the board.

*Id.* at 144–45, 143 N.W. at 263. The group was sufficiently small and the statements in the article sufficiently pointed to support a libel action by a member of the board.

In *Palmerlee v. Nottage,* 119 Minn. 351, 138 N.W. 312 (1912), a member of the board of county commissioners for Dodge County sued a local newspaper for two allegedly defamatory articles. The first article charged the county commissioners with favoritism, nepotism and malfeasance in office. The second article indicated that one could "work" the county commissioners "easy enough." Plaintiff was not mentioned by name in either article and the opinion in the case does not disclose the number of commissioners on the county board. The Supreme Court affirmed the trial court's order overruling defendants' demurrers to the complaint. The only reference in the opinion to the fact of group as opposed to individual libel is the following:

> The one doubt which may be suggested against the complaint on the second cause of action [i. e., as to the second article] is that the county commissioners cannot act, except as a body; therefore to work the board one needs only work the majority; hence the minority is not touched by the accusation. But the charge is not made against the board as such, and the complaint alleges that the language was used of and concerning plaintiff. In alleging a cause of action for libel in this state . . ., "it shall be sufficient, instead of stating

extrinsic facts showing the application to plaintiff of the defamatory matter complained of, to allege, generally, that the same was published or spoken concerning the plaintiff; and if such allegation is controverted, the plaintiff is bound to establish on the trial that it was so published or spoken." We think this complaint comes within the rule of *Petsch v. Dispatch Printing Co.,* 40 Minn. 291, 41 N.W. 1034.

*Id.* at 353–54, 138 N.W. at 313.

In *Petsch v. St. Paul Dispatch Printing Co.,* 40 Minn. 291, 41 N.W. 1034 (1889), a St. Paul alderman sued the St. Paul Dispatch for publishing an article which allegedly defamed members of the "city hall ring." Plaintiff was identified in the article by name and as a lieutenant to the chief of the gang. The court found the complaint sufficient in light of the statute referred to in *Palmerlee.* In both *Palmerlee* and *Petsch,* a small group was defamed and a statute then in effect [3] provided that alleging that the defamation was of and concerning the plaintiff sufficed to withstand demurrer.

In *Stewart v. Wilson,* 23 Minn. 449 (1877), the court dealt with a statement of broader impact. The statement appeared in an article which contained the pleading of the defendant in another court action and comments by him. The allegedly defamatory statement was: "We have not the slightest doubt but there is a good deal of perjury in these numerous cases, and it ought to be shown up." The plaintiff in the other action sued the defendant again, this time for libel. The court held, *inter alia*:

> The . . . sentence . . . in and of itself imputes perjury to no particular person. It is not stated what "these numerous cases" were, nor who were the parties thereto, though it may fairly be inferred, perhaps, from the article, that one of them was indicated by the title to the answer therein contained and published. But it nowhere appears from the article that plaintiff ever made any affi-

---

3. Minn.St. 544.25 was superseded effective January 1, 1952, by the Minnesota Rules of Civil Procedure, and was repealed in 1974.

davit, or was sworn, in that action; nor is the existence or knowledge of any fact averred in the complaint from which any one, in reading the article, could reasonably infer that plaintiff was intended, by this paragraph, to be charged with the crime of perjury. As respects any personal allusion, it is as indefinite and meaningless as a general statement that "a great deal of perjury is committed in most or many litigated cases, and it ought to be shown up." No one would be warranted in appropriating such a remark to himself, or in supposing it to have been intended for another. To render a statement or remark of this general character actionable, it must appear to have been used in other than an impersonal sense, and under circumstances raising a reasonable presumption that it had some particular personal allusion and meaning. In this case the article itself discloses no such circumstances, and, none having been pleaded, the complaint in this regard is fatally defective.

*Id.* at 453–54. Under *Stewart,* a statement defaming a large group will not be actionable by members of the group unless the context of publication raises a reasonable presumption of personal allusion.

Minnesota law thus appears to accord with the Second Restatement of Torts:

One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if,

(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or

(b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Restatement (Second) of Torts § 564A (1976). With respect to subsection (a), "[i]t

is not possible to set definite limits as to the size of the group or class, but the cases in which recovery has been allowed usually have involved numbers of 25 or fewer." *Id.* comment b. *Accord,* W. Prosser, Handbook of the Law of Torts, § 112, at 750 (4th ed. 1971).

Plaintiffs here advance membership in two classes which have been the subject of alleged defamation by the articles. The first class is composed of distributors of laetrile. The second class consists of the 19 persons indicted by the grand jury in San Diego in May, 1976. Plaintiffs allege that both articles defamed the first class, and that the *Time* article defamed the latter.

■ The population of the class composed of distributors of laetrile numbered over 1000 and was of national scope in 1976. See, *Hanson v. United States,* Civ. 4–76–11, transcript of hearing on preliminary injunction, pp. 56, 63, 69, 87–88, 122 (D.Minn. 1976). The size of this class is too large and its geographical distribution too wide to permit actions for libel by individual class members when the allegedly libelous statements speak only in general terms about the class. See, *Stewart v. Wilson,* 23 Minn. 449, 453–54 (1877) (quoted at page 976 supra).[4]

■ Plaintiffs argue that no matter how large the class, if the alleged defamatory statements are understood by some readers to refer to plaintiffs, personal application is established. This argument is correct only when the circumstances of publication reasonably give rise to the conclusion that there is a personal reference to the class member. *Stewart v. Wilson,* 23 Minn. 449, 453–54 (1877) (quoted at page 976 supra); Restatement (Second) of Torts § 564A (1976). Plaintiffs have indicated nothing of special consequence in the manner of publication or distribution of 5.7 million copies of *Time* the week of June 7, 1976, or 2 million

---

4. Accord, e. g., *Brewer v. Hearst Publ. Co.,* 185 F.2d 846 (7th Cir. 1950) (applying Illinois law; supporters of vivisection); *Fowler v. Curtis Publ. Co.,* 86 U.S.App.D.C. 349, 182 F.2d 377 (1950), *aff'ing,* 78 F.Supp. 303 (D.D.C.1948) (60 taxicab drivers employed by one company); *Robinson v. Guy Gannett Publ. Co.,* 297

F.Supp. 722 (D.Me.1969) (applying Maine law; group of persons hiring deaf people to sell novelties); *Watts-Wagner Co. v. General Motors Corp.,* 64 F.Supp. 506 (S.D.N.Y.1945) (applying New York law; "army of racketeers" selling battery additives).

copies of *U.S. News & World Report* the week of June 21, 1976, which would give rise to the conclusion that there was any personal reference to either of them.

■ Plaintiffs' stature in the laetrile controversy makes the articles no more pointed. The effectiveness of laetrile as a cure for cancer is an issue of public moment, as plaintiffs themselves advocate. See, *Hanson v. United States,* 417 F.Supp. 30 (D.Minn.), *aff'd,* 540 F.2d 947 (8th Cir. 1976) (per curiam). To hold that statements commenting generally on the laetrile controversy are of and concerning individuals prominent in the controversy would chill heated public debate into lukewarm pap. The first amendment does not countenance such a deterrent to free speech. Cf. *New York Times Co. v. Sullivan,* 376 U.S. 254, 288–92, 84 S.Ct. 710, 730–32, 11 L.Ed.2d 686 (1964).

■ Because the *Time* article discussed in some detail the indictment returned in May, 1976, in San Diego, defendant Time, Inc. relies in addition on the privilege accorded accurate accounts of official actions or proceedings. The Second Restatement describes the privilege as follows:

The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Restatement (Second) of Torts § 611 (1976). Compare, *Nixon v. Dispatch Printing Co.,* 101 Minn. 309, 112 N.W. 258 (1907); *Hurley v. Northwest Publs. Inc.,* 273 F.Supp. 967 (D.Minn.1967), *aff'd,* 398 F.2d 346 (8th Cir. 1968), with Minn.St. 609.765, subd. 3(4) & Advisory Committee Comment, 40A Minn. St.Ann. 136 (1964). The privilege is applicable to an accurate report of an indictment returned by a grand jury. Restatement (Second) of Torts § 611, comment d (1976). The Supreme Court has held that "the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975).

■■ Insofar as the *Time* article focuses on those indicted by the grand jury, apart from the persons identified by name in the article, it does so as follows:

Following a year's investigation, a San Diego grand jury indicted Contreras and six other Mexicans, one Canadian and eight Americans, as well as three Mexican firms, for peddling the contraband drug in the U.S. through à multimillion-dollar smuggling operation supplying some 10,000 cancer victims a day. . . .

. . . According to the indictment, the conspirators—some of whom piled up bank accounts totaling millions of dollars—used a network of American and Mexican smugglers to get supplies of the drug across the border.

Since the number of persons indicted is small enough to permit the possibility of individualization of group libel, and since the reference to "some" of the conspirators might possibly permit personal application of stigma to plaintiffs,[5] the privilege protecting accurate reports of a grand jury indictment must apply to permit summary judgment for Time, Inc. A comparison of the indictment with the passages quoted above reveals that the *Time* article was a fair and substantially accurate account of the grand jury indictment. As such, the privilege attaches, Restatement (Second) of Torts § 611, comment f (1976), and summary judgment is appropriate.

As members of two groups allegedly defamed by articles appearing in *U.S. News & World Report* and *Time,* plaintiffs brought this libel action against the publishers of the respective magazines. One of the groups, composed of distributors of laetrile,

---

**5.** See, *Palmerlee v. Nottage,* 119 Minn. 351, 138 N.W. 312 (1912) (quoted at page 976 supra); Restatement (Second) of Torts § 611, comment c (1976); W. Prosser, Handbook of the Law of Torts § 111, at 751 (4th Ed. 1971).

was too populous to permit personal reference to be inferred from group libel. Thus, statements allegedly defamatory of this group are not of and concerning plaintiffs. Any defamation of the second group arose from an accurate report of a grand jury indictment. It is therefore privileged. Consequently, the injury to plaintiffs' personal and professional reputations to which they attest is not legally cognizable. A contrary holding would contravene Minnesota defamation law and would chill free speech.

Accordingly, IT IS HEREBY ORDERED that the motions of defendants for summary judgment be and hereby are granted.

LET JUDGMENT FOR DEFENDANT U.S. NEWS AND WORLD REPORT, INC. AND TIME, INC. BE ENTERED ACCORDINGLY.