**Gerardo MORENO, Appellant,**

v.

**CROOKSTON TIMES PRINTING CO., d/b/a Crookston Daily Times, Respondent,**

**Dennis McDaniel, Respondent.**

No. C6-98-2421.

Court of Appeals of Minnesota.

June 15, 1999.

Kay Nord Hunt, Stephen C. Rathke, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Paul R. Hannah, St. Paul; and Kenneth F. Johannson, Johannson, Taylor, Rust & Fagerlund, Crookston, for respondent Crookston Times.

John D. Waller, William E. McKechnie & Associates, P.A., Grand Forks, ND, for respondent McDaniel.

Edward N. Mansur, William R. Space, Mansur and O'Leary, P.A., St. Paul, for amicus curiae Minnesota Police and Peace Officers Association.

Considered and decided by
TOUSSAINT, Chief Judge,
SCHUMACHER, Judge, and HUSPENI, Judge.*

## OPINION

SCHUMACHER, Judge

Appellant Gerardo Moreno challenges adverse judgment on the pleadings of his defamation claim against respondents Crookston Times Printing Co., d/b/a Crookston Daily Times, and Dennis McDaniel. We conclude that the description of the fair-report privilege found in the Restatement (Second) of Torts § 611 (1977) does not represent the law in Minnesota. We reverse and remand.

## FACTS

Moreno is a Crookston police officer. His defamation action arises out of a March 10, 1998, Crookston city council meeting. Near the close of meetings, it was customary for the council to recognize anyone in the audience who wished to speak. McDaniel was recognized and proceeded to state that Crookston's "kids got problems with drugs and it'd help if we could get Mr. Moreno to quit dealing with drugs out of the back of his police car." On March 23, 1998, the Crookston Daily

Times published a front-page story, headlined "CPD reacting to accusation." The story reported McDaniel's accusation and described the reaction of Police Chief Paul Monteen.

Moreno filed a defamation action against the Crookston Daily Times and McDaniel. The complaint alleged that the Daily Times published the newspaper article containing false and defamatory statements with malice. The district court granted the Daily Times's motion for judgment on the pleadings, finding that the statement reported by the Daily Times was privileged as a fair and accurate report of a public proceeding. The court rejected Moreno's argument that a showing of malice could defeat the fair-report privilege.

## ISSUE

Can the common law privilege associated with the fair and accurate reporting of public proceedings be defeated by a showing of common law malice?

## ANALYSIS

When considering a motion for judgment on the pleadings, the district court must accept the allegations contained in the pleading under attack as true. *State ex rel. City of Minneapolis v. Minneapolis St. Ry. Co.*, 238 Minn. 218, 223, 56 N.W.2d 564, 567 (1952). All assumptions made and inferences drawn must favor the party against whom the judgment is entered. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 396, 122 N.W.2d 26, 30 (1963). The only question on review of a judgment on the pleadings is " 'whether the complaint sets forth a legally sufficient claim for relief.' " *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980) (quotation omitted).

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Minnesota common law traditionally followed the English common law rule that the defendant was strictly liable for unprivileged publication of false and defamatory statements that injured the reputation of the plaintiff. *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 480–81 (Minn.1985). At common law, a series of privileges, absolute and qualified, shield some defendants from liability. *Id.* at 481. Qualified privileges historically attach in a broad range of circumstances where the publication has been

> "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned."

*Id.* (quotation omitted). "Once the defendant has established a prima facie qualified privilege, that privilege is lost if plaintiff proves defendant's common law malice." *Id.* (citation omitted).

Under the common law definition, malice exists where the defendant " 'made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring plaintiff.' " *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn.1980) (quoting *McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921)). We note that historically this common law malice was often referred to as "actual malice." *See, e.g., Friedell v. Blakely Printing Co.*, 163 Minn. 226, 230–31, 203 N.W. 974, 975–76 (1925); *McKenzie*, 149 Minn. at 312, 183 N.W. at 517; *Hansen v. Hansen*, 126 Minn. 426, 427, 148 N.W. 457, 457 (1914); *Hebner v. Great N. Ry. Co.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899).

In contrast, an absolute privilege applies only to protect the public service and the administration of justice and operates as a complete defense regardless of malice. *Jadwin*, 367 N.W.2d at 481.

In the last 35 years, the law of defamation and its privileges has grown more complex. Under the First Amendment, the United States Supreme Court limited state common law, disallowing damage awards to public official/figure defendants unless there is proof of actual malice. *See Jadwin*, 367 N.W.2d at 481–83 (summarizing United States Supreme Court jurisprudence). In contrast to common law malice, "[a]ctual malice is shown only by proof of defendant's actual knowledge of falsity or reckless disregard of the truth or falsity of his publication." *Id.* at 482 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 285–86, 84 S.Ct. 710, 725–26, 728–29, 11 L.Ed.2d 686 (1964)).

Furthermore, the increase in employment litigation has produced a body of state case law analyzing defamation claims in the employment context. *See, e.g., Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876 (Minn. 1986); *Stuempges*, 297 N.W.2d 252. The issue in this case, however, is limited to the proper application of the fair-report privilege, a common law privilege that has not received any substantial explication by either the United States Supreme Court or the Minnesota Supreme Court.

Relying on the Restatement (Second) of Torts § 611, the district court concluded that malice is irrelevant to the application of the fair-report privilege.

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

Restatement (Second) of Torts § 611 (1977). The Restatement (Second) notes that

> the privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false.

*Id.* at cmt. a. All that is required is that the report be fair and accurate. The Re-

statement (Second) account of the fair-report privilege differs significantly from the First Restatement, which further required that the statement be "not made solely for the purpose of causing harm to the person defamed." Restatement (First) of Torts § 611 (1938). Although neither Restatement uses the term "malice," the Restatement (Second) § 611 effectively takes the position that malice in the sense of an improper motive or purpose will not constitute an abuse of the privilege. W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 115, at 838 (5th ed.1984).

We must consider whether the position of the Restatement (Second) § 611 is consistent with Minnesota law. In *Jadwin*, the Minnesota Supreme Court referred to a qualified privilege associated with "reports of official proceedings or public meetings." 367 N.W.2d at 481 (citing *Nixon v. Dispatch Printing Co.*, 101 Minn. 309, 112 N.W. 258 (1907)). The supreme court noted that a prima facie qualified privilege is lost when a plaintiff proves common law malice. 367 N.W.2d at 481. On remand, this court in *Jadwin* stated that "[n]ewspapers have a qualified privilege when making a fair and accurate report of public records." *Jadwin v. Minneapolis Star & Tribune Co.*, 390 N.W.2d 437, 441 (Minn.App.1986) (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 455–57, 96 S.Ct. 958, 965–66, 47 L.Ed.2d 154 (1976); *Nixon*, 101 Minn. 309, 112 N.W. 258). The United States Supreme Court's analysis in *Time* arises out of First Amendment jurisprudence and, as such, relates to the constitutional qualified privilege, not to the common law privilege at issue here. *See Time*, 424 U.S. at 455, 96 S.Ct. at 966.

In *Nixon*, the Minnesota Supreme Court stated that the "law is well settled that a publication of judicial proceedings, if fair and impartial, is privileged." 101 Minn. at 311, 112 N.W. at 258. The *Nixon* court cited a section of the penal code providing that, without proving malice, newspapers could not be prosecuted for libel for the

publication "of a fair and true report of any judicial, legislative, or other public and official proceeding." 101 Minn. at 311–12, 112 N.W. at 258 (citing Rev. Laws 1905, § 4920). *But cf.* Minn.Stat. § 609.765, subd. 3(4) (1998) (current version of fair report justification for criminal defamation makes no mention of malice). Other than *Nixon*, and the citations to *Nixon* in the *Jadwin* cases, we find no other discussion of the common law fair-report privilege in Minnesota caselaw.

The district court cited *Schuster v. U.S. News & World Report Inc.*, 602 F.2d 850 (8th Cir.1979) (aff'g 459 F.Supp. 973 (D.Minn.1978)), as caselaw "where federal courts have interpreted Minnesota law and applied section 611." The Eighth Circuit in *Schuster* stated that it agreed with the district court that under Minnesota law a publication was privileged as a fair and accurate report of judicial proceedings. 602 F.2d at 854 (citing *Hurley v. Northwest Publications, Inc.*, 273 F.Supp. 967 (D.Minn.1967), *aff'd*, 398 F.2d 346 (8th Cir. 1968)). Although not cited by the Eighth Circuit, the district court in *Schuster* quoted the Restatement (Second) of Torts § 611 in describing the fair-report privilege, but did not discuss the role of malice whatsoever. 459 F.Supp. at 978. The *Schuster* district court also cited *Nixon* and *Hurley*. *Id.* In *Hurley*, the federal district court quoted the Restatement (First) as a description of the fair-report privilege and considered the factual basis for malice to defeat the privilege. 273 F.Supp. at 970–72. Despite the quotation of the Restatement (Second), we do not read *Schuster* as support for the proposition that malice is irrelevant.

■ We conclude that Minnesota law does not support the proposition that malice is irrelevant to the fair-report privilege. In 1907, the *Nixon* court indicated that the fair-report privilege applied unless malice could be proved. 101 Minn. at 311–12, 112 N.W. at 258. In 1985, the *Jadwin* court cited to the privilege in *Nixon* as an example of a common law qualified privilege.

367 N.W.2d at 481. The *Jadwin* court stated that qualified privileges are lost if plaintiff proves defendant's common law malice. *Id.* Accordingly, as with any common law qualified privilege, the qualified privilege associated with the fair and accurate reporting of public proceedings can be defeated by a showing of common law malice.

## DECISION

The Restatement (Second) of Torts § 611 does not represent Minnesota law. The qualified privilege associated with the fair and accurate reporting of public proceedings can be defeated by a showing of common law malice.

**Reversed and remanded.**