Gerardo **MORENO**, Respondent,

v.

**CROOKSTON TIMES PRINTING CO.,**
**d/b/a Crookston Daily Times,**
**petitioner, Appellant,**

**Dennis McDaniel, Respondent.**

**No. C6–98–2421.**

Supreme Court of Minnesota.

May 18, 2000.

Paul R. Hannah, St. Paul, and Kenneth F. Johannson, Johannson, Taylor, Rust & Fagerlund, Crookston, for Appellant.

Kay Nord Hunt, Stephen C. Rathke, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Respondent Moreno.

Dennis McDaniel, Crookston, pro se Respondent.

William R. Space and Edward N. Mansur, Mendota Heights, for amicus curiae MN Police and Peace Officers Ass'n.

Stephen R. McSpadden, Washington, D.C., for amicus curiae Nat'l Assn. of Police Org.

Mark R. Anfinson, Minneapolis, for amicus curiae MN Newspaper Ass'n.

Terrance Moore, Edina, for amicus curiae MN Broadcasters' Ass'n.

## OPINION

PAUL H. ANDERSON, Justice.

Crookston Times Printing Co., d/b/a Crookston Daily Times, appeals a Minnesota Court of Appeals decision reversing a district court grant of summary judgment on a defamation claim brought by Crookston Police Officer Gerardo Moreno. The Times asks us to decide whether the fair and accurate reporting privilege protects a Times' article that reported allegedly defamatory statements made by a local citizen during a city council meeting. Officer Moreno cross-appeals on whether the district court properly applied the fair and accurate reporting privilege to the Times' article. We reverse the court of appeals' holding that a showing of common law malice will defeat the fair and accurate reporting privilege. We also reverse the district court, concluding that it erred in its application of the fair and accurate reporting privilege to the Times' article. We reverse and remand to the district court.

The facts of this matter are essentially undisputed and are recounted here as presented to the district court on summary judgment. On March 10, 1998, the Crookston City Council held a regularly scheduled council meeting. Near the end of the council meeting, Vice Chair Frank Lindgren recognized respondent Dennis McDaniel, a local citizen who wished to address the council. Comments from local citizens are regularly permitted at council meetings. McDaniel told the council that "our kids have problems" and requested that the council "stop Officer Moreno from dealing drugs out of his Police car." McDaniel asserted that he had witnesses to prove his statements. After McDaniel concluded his remarks, Lindgren stated that the council "would take this under

advisement." The council concluded its business and adjourned shortly thereafter.

Michael Christopherson, city editor of appellant Crookston Times Printing Co., d/b/a/ Crookston Daily Times, was present at the city council meeting. However, the Times did not immediately report McDaniel's remarks. On March 20, 1998, Christopherson became aware of rumors circulating in Crookston about the possible arrest of a Crookston police officer. That same day, Christopherson interviewed Crookston Police Chief Paul Monteen. Monteen told Christopherson that the rumors about a police officer having been arrested were untrue generally, and specifically that respondent Officer Gerardo Moreno had not been arrested. When questioned about McDaniel's accusations at the city council meeting, Monteen said that the police department "would be remiss" if it did not follow up on McDaniel's accusation. Monteen also indicated that the Crookston Police Department either could not or would not investigate its own officers.

On March 23, 1998, the Times ran a front-page article titled "CPD reacting to accusation," which article is central to the dispute in this case. The article recounted the events of the previous 13 days with regard to McDaniel's accusation and the subsequent follow-up, including Christopherson's interview with Chief Monteen recounting the rumors of police arrests and Monteen's statement that those rumors were untrue. The report also noted that McDaniel was a frequent contributor to the Times' editorial page. The article as published read as follows:

### CPD reacting to accusation

### By Mike Christopherson

### City Editor

The Crookston Police Department is following up on a citizen's accusation of wrongdoing by a police officer made at the conclusion of the March 10 City Council meeting.

Council meetings are open to public comment at their conclusion, but rarely are any comments made. At that meeting, however, as ward six alderman and Vice–Mayor Frank Lindgren—sitting in for the absent Mayor Don Osborne—prepared to adjourn for the evening, ward one resident Dennis McDaniel asked for an opportunity to speak.

When recognized and told he had the floor, McDaniel said that young people in Crookston have a lot of problems, including drugs, and he said their drug problems would be decreased if someone would do something to stop Crookston Police officer Gerry Moreno from selling drugs out of the trunk of his squad car. McDaniel also said he had witnesses.

After getting McDaniel's name and address, Lindgren said the council would take the matter under advisement.

Police Chief Paul Monteen on Friday limited his comments on the matter, saying only that the police department "would be remiss" not to see that McDaniel's accusation is followed up on. When the process is concluded, Monteen said more information would be forthcoming.

After McDaniel's comments at the March 10 meeting, Monteen spoke with him.

"I asked him if he wanted to make a formal complaint, and he declined to do so," Monteen said. "I haven't talked to him since."

As Friday wore on, rumors of an officer or officers being "busted" for wrongdoing circulated around town. Monteen said the rumors were untrue. He said he had been at a training session with officer Moreno for the better part of Friday.

If McDaniel's name sounds familiar, that's because it is. He's an outspoken citizen, and is a frequent contributor to the Times' Editorial Page.

The Times asserts that Officer Moreno called the Times the day after the article

was published, but that subsequent efforts to make contact failed. Moreno, through his counsel, then sent a letter to the Times demanding a retraction of the March 23 article. This letter was sent in accordance with Minn.Stat. § 548.06 (1998).[1] The Times did not retract the article, and continued a follow-up investigation into the story.

On April 15, 1998, Christopherson spoke by telephone with McDaniel who reiterated the truth of his accusation at the council meeting. In another interview later that same day, McDaniel stated that he had been "looking after" a boy who informed him that Officer Moreno had appeared at a local party in his patrol car and had been dealing drugs. McDaniel also told Christopherson that he knew of other witnesses to Moreno's activities, but would not reveal names because the witnesses were scared. McDaniel did identify one person by name who he claimed also heard the boy's statement. However, when Christopherson attempted to contact that person, he learned that the person had died.

On April 16, 1998, Christopherson contacted the U.S. Drug Enforcement Agency's Fargo, North Dakota Field Office and inquired about any investigation related to McDaniel's accusation. An agent informed Christopherson that the DEA had investigated Officer Moreno, that the investigation was complete, and that the DEA found no support for McDaniel's accusa-tion. On April 20, 1998, the Times ran a second article recounting the results of the DEA investigation, stating that the DEA had found no evidence of wrongdoing by a Crookston police officer.

A few weeks after the second article, Officer Moreno brought an action against the Times in Polk County District Court, alleging that the March 23 article was defamatory and was made with negligent and reckless disregard for the truth and with malice. The Times' answer asserted several defenses of privilege, including that the article was a fair comment on the conduct of a public official, made in the public interest on a matter of public concern, and was a fair and accurate report of a public proceeding. It is only this latter defense—that the article was a fair and accurate report of a public proceeding—that is the subject matter of this appeal. On July 23, 1998, the Times moved for "judgment on the pleadings or for summary judgment," arguing that its March 23 article was privileged as a fair and accurate report of a public proceeding.

The district court granted the Times' motion for "judgment on the pleadings or, in the alternative, summary judgment." In its attached memorandum, the court concluded that the fair and accurate reporting privilege as described in the Restatement (Second) of Torts § 611 (1976) was applicable under Minnesota law.[2] The court then concluded that the Times'

---

1. Minnesota Statutes § 548.06 states that:

   In an action for damages for the publication of a libel in a newspaper, the plaintiff shall recover no more than special damages, unless a retraction be demanded and refused as hereinafter provided. The plaintiff shall serve upon the publisher at the principal place of publication, a notice, specifying the statements claimed to be libelous, and requesting that the same be withdrawn. If a retraction thereof be not published on the same page and in the same type and the statement headed in 18–point type or larger "RETRACTION," as were the statements complained of, in a regular issue thereof published within one week after such service, the plaintiff may allege such notice, demand, and failure to retract in the complaint and recover both special and general damages, if the cause of action be maintained. If such retraction be so published, the plaintiff may still recover general damages, unless the defendant shall show that the libelous publication was made in good faith and under a mistake as to the facts.

2. Restatement (Second) of Torts § 611 (1976) states:

   The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported.

March 23 article was a fair and accurate report of a public proceeding and that it was therefore privileged. The court also noted that a showing of malice would not defeat this privilege. At Officer Moreno's request, the court amended its order to permit immediate entry of final judgment for the Times and against Moreno to allow Moreno to commence his appeal pursuant to Minn. R. Civ. P. 54.02.

The court of appeals reversed the district court and remanded, concluding that the Restatement (Second) of Torts § 611 was not the law in Minnesota and that a showing of common law malice would defeat any privilege attaching to the fair and accurate reporting of public proceedings. *See Moreno v. Crookston Times Printing Co.*, 594 N.W.2d 555, 559 (Minn.App.1999). We accepted review of the court of appeals' decision and, on cross-appeal by Officer Moreno, review of the issue of whether the district court properly applied the fair and accurate reporting privilege to the entire Times' article.

### I.

■ Before addressing the specific legal questions presented on review, we must resolve two preliminary issues. First, we address the procedural posture of the matter before us. The record is unclear about what the district court intended when it granted the Times' motion for "judgment on the pleadings or, in the alternative, summary judgment." The court did not specify which it was granting—judgment on the pleadings or summary judgment. The court of appeals treated this matter as an appeal from an entry of judgment on the pleadings under Minn. R. Civ. P. 12.03. *See Moreno*, 594 N.W.2d at 556. Because the court of appeals concluded that the district court applied an incorrect legal standard, it did not consider whether the district court correctly applied that standard to the Times' article.

Both the rules of civil procedure and the decisions of our court are clear, "[i]f, on [a motion for judgment on the pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56 * * *." Minn. R. Civ. P. 12.03; *see also McAllister v. Independent Sch. Dist. No. 306*, 276 Minn. 549, 551, 149 N.W.2d 81, 83 (1967). The district court ruled that the Times' March 23 article was a fair and accurate report of the March 10 city council meeting. To do this, the court considered the article, which was attached and incorporated into Officer Moreno's complaint. However, in order to reach its conclusion, the court also had to compare the article with the official transcript of the city council meeting. Neither party incorporated a transcript of the city council meeting into the pleadings, but the Times attached a copy of the minutes to its motion for summary judgment. The court therefore considered matters outside the pleadings in making its ruling. Accordingly, we conclude that the court decided this matter as a summary judgment motion under the rules of civil procedure and our review will proceed accordingly.

The second preliminary issue to resolve is whether Officer Moreno alleged that the entire March 23 article was defamatory or merely those parts that relayed McDaniel's accusation at the city council meeting. Moreno asserts that his complaint was not limited to any particular part of the article, but rather alleged that the article as a whole was defamatory. The Times claims that Moreno's complaint alleged as defamatory only that part of the article—paragraph three—which relayed McDaniel's accusation. Neither the district court nor the court of appeals addressed this issue; however, our analysis requires that it be resolved.

Minnesota law has generally required that in defamation suits, the defamatory matter be set out verbatim. *See American Book Co. v. Kingdom Pub. Co.*, 71 Minn. 363, 366, 73 N.W. 1089, 1090 (1898). In the case of an allegation that a newspaper article contained defamatory material,

a plaintiff need set out only so much of the article as contains the defamatory material. *See Blethen v. Stewart,* 41 Minn. 205, 206, 42 N.W. 932, 932 (1889). Otherwise, our general rules of pleading only require "a short and plain statement of the claim showing that the pleader is entitled to relief * * *." Minn. R. Civ. P. 8.01.

In this case, Officer Moreno's complaint set forth that:

4. On March 23, 1998, Defendant Daily Times published the newspaper article which is attached to this Complaint as Exhibit A and incorporated herein.

5. On information and belief, at the March 10, 1998 meeting of the city council of the City of Crookston, Defendant McDaniel made the statements contained in the third paragraph of the newspaper article referred to in the preceding paragraph.

6. The statements made by Defendants are defamatory.

7. The statements made by Defendants are false and Defendants either knew or, exercising the care of a reasonable person under the circumstances, should have known that they are false.

* * * *

9. Defendant Daily Times made and published the newspaper article containing the statements with malice.

Paragraph five of the complaint puts McDaniel's accusation as contained in paragraph three of the article at issue, but paragraphs four, six, and nine put the Times' article in its entirety at issue. Further, the Times' answer neither limits its response to any particular part of the article nor does it specifically ask the district court to limit Officer Moreno's claim. The plain language of the complaint and our general rules of pleading indicate that Moreno pleaded facts sufficient to place the entire March 23 article at issue in this matter. We will treat it accordingly.

## II.

The central dispute in this appeal focuses on the nature and the scope of the fair and accurate reporting privilege as it applies to civil claims of defamation[3] for reporting the events of a city council meeting. The Times urges us to affirm the district court's conclusion that the Restatement (Second) of Torts § 611 articulates the fair and accurate reporting privilege in Minnesota and that the privilege may not be defeated by a showing of malice. Officer Moreno argues that the fair and accurate reporting privilege in Minnesota is a qualified privilege and may be defeated by a showing of malice. Because this matter comes before us from a grant of summary judgment and does not involve any disputed facts, only questions of law, we review it de novo. *See Christensen v. Eggen,* 577 N.W.2d 221, 224 (Minn.1998).

This court has never specifically addressed the application of a fair and accurate reporting privilege in the context of a city council meeting. Nor have we adopted the Restatement (Second) of Torts § 611 as the law in Minnesota. Therefore, we proceed to address the questions of whether, under Minnesota law, we recognize a fair and accurate reporting privilege; if so, whether we should adopt section 611 as the specific articulation of the privilege; and finally, if we do recognize a fair and accurate reporting privilege, whether this privilege protects the Times' March 23 article.

*History of Defamation Law*

We begin our discussion with a review of those developments in the history of the law of defamation that are central to the issues presented in this case. The com-

---

3. We note that Minnesota does afford immunity from criminal liability for defamation if the "communication consists of a fair and true report or a fair summary of any judicial, legislative or other public or official proceeding * * *." Minn.Stat. § 609.765, subd. 3(4) (1998).

mon law claim of defamation at civil law[4] sought to redress those injuries to reputation caused by the publication of false information damaging to another's reputation. See W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 111, at 772 (5th ed.1984). Earlier in the state's history, Minnesota law followed the English common law rule, imposing strict liability for defamation. See *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 480 (Minn.1985). Under the English common law rule, "[t]he defendant was liable, regardless of fault, for unprivileged publication of false and defamatory statements which injured the reputation of the plaintiff." *Id.* at 480–81.

This strict liability rule was limited by several types of privileges that protected a publisher from liability for potentially defamatory statements. In Minnesota, these privileges generally have been divided into two categories, absolute and qualified privileges. See *Matthis v. Kennedy*, 243 Minn. 219, 223, 67 N.W.2d 413, 416 (1954). Absolute privileges, once established, protect a publisher of potentially defamatory statements regardless of motive and cannot be defeated by any showing of malice. See *id.* An absolute privilege applies to protect the public service or the administration of justice. See, e.g., *id.* at 223, 67 N.W.2d at 417 (discussing matters published in a judicial proceeding related to the subject matter of the proceeding); *Peterson v. Steenerson*, 113 Minn. 87, 129 N.W. 147 (1910) (discussing publications in the course of legislative proceedings).

Qualified privileges have attached to a broader range of circumstances where the interest in shielding the defendant is considered less compelling, but still requiring some protection. See *Jadwin*, 367

N.W.2d at 481. Historically, a qualified privilege has protected a publication when it was made by a person in the discharge of a public or private duty, legal or moral, or in the conduct of his own affairs and in matters where his interest is concerned. See *id.*; see also Restatement (Second) of Torts §§ 593–598A (conditional privileges). Unlike absolute privileges, however, a showing of common law malice, ill will, or improper motive would defeat a qualified privilege. See *Jadwin*, 367 N.W.2d at 481.

The United States Supreme Court historically treated issues of defamation as being solely within the province of the states because defamatory comments were, by definition, not protected speech under the First Amendment. See *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). However, in *New York Times v. Sullivan*, the Court articulated a First Amendment concern with the law of defamation as it was applied in the public forum, specifically public comment on public officials. 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[5] Our court has also recognized the tension between common law defamation and the First Amendment. We have observed that "[t]he law of libel originated to promote certain interests of the state by means antipathetic to values central to our First Amendment guarantees." *Jadwin*, 367 N.W.2d at 480.

The *Sullivan* Court, while recognizing the strong interest in redressing harms to reputation, stated that public debate on matters of general concern should be "uninhibited, robust, and wide-open" and that such debate might well include "vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials." 360 U.S. at 270, 79 S.Ct. 1173. The Court, balancing the constitu-

---

**4.** Minnesota's criminal law also provides for the prosecution of defamation as a crime under Minn.Stat. § 609.765 (1998).

**5.** All the parties appear to agree that for the purposes of this case Officer Moreno, as a police officer, is a public official for the pur-

poses of defamation law. See, e.g., *Britton v. Koep*, 470 N.W.2d 518, 523–24 (Minn.1991) (holding a parole officer, like other law enforcement officials, is a public official for the purposes of a defamation analysis).

tional and policy interests in free and open public discourse and an individual's right to compensation for harm to reputation, concluded that public officials could only recover for defamation upon a showing of "actual malice." *See id.* at 279–80, 79 S.Ct. 1173. The Court defined "actual malice" as a showing that the publisher of a defamatory statement acted with knowledge that the statement was false or with reckless disregard for the truth or falsity of the statement. *See id.* at 280, 79 S.Ct. 1173.

■ A few years later, the Supreme Court extended *Sullivan's* application by ruling that a state may no longer impose strict liability for defamation. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345–48, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In response to *Gertz,* we adopted a negligence standard for private individuals asserting defamation claims in Minnesota, stating that "a private individual may recover actual damages for a defamatory publication upon proof that the defendant knew or in the exercise of reasonable care should have known that the defamatory statement was false." *Jadwin,* 367 N.W.2d at 491.

■ The Supreme Court's definition of actual malice has generated some confusion in the law of defamation. Therefore, in the context of privileges in defamation law, it is important to distinguish between "actual malice" and "common law malice." *See Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 666 n. 7, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (commenting on the confusing nature of the phrase "actual malice"). The Supreme Court provided a technical definition of "actual malice" as a knowing or reckless disregard for the truth or falsity of a statement that has nothing to do with motive or ill will in the publishing of otherwise defamatory statements. *See id.* at 666–67, 109 S.Ct. 2678. Conversely, common law malice was generally proved in a defamation matter by a showing of ill will or improper motive for the publication of defamatory statements. *See Jadwin,* 367 N.W.2d at 481 n. 5.

*Minnesota Case Law*

Until now, our court has directly addressed the fair and accurate reporting privilege only in the context of judicial proceedings and has never stated whether it was an absolute or a qualified privilege. Almost a century ago, we held that the fair and accurate report of a judicial proceeding was privileged, as long as the matter reported fell within the control of the proceeding. *See Nixon v. Dispatch Printing Co.,* 101 Minn. 309, 311, 112 N.W. 258, 258 (1907).

In *Nixon,* we addressed whether statements taken from a complaint filed in district court for a divorce proceeding and published in the local newspaper were privileged. *See id.* The *Nixon* court stated that "[t]he law is well settled that a publication of judicial proceedings, if fair and impartial, is privileged." *Id.* But the court then concluded that the pleadings in that case had not yet been presented to the district court for action so they were not yet part of a judicial proceeding and therefore their publication was not privileged. *See id.* at 313, 112 N.W. at 259.

*Nixon's* holding that pleadings not yet accepted by a court are outside the scope of the fair and accurate reporting privilege was incorporated into comment e of Restatement (Second) of Torts § 611 and has been recognized by commentators as defining one of the limits of the privilege. *See* Restatement (Second) of Torts § 611, cmt. e; *see also Prosser and Keeton on Torts* § 115, at 837 n. 51. In *Nixon,* we did not state whether a showing of common law malice would defeat the fair and accurate reporting privilege, nor did we directly address whether the privilege was an absolute or a qualified privilege. Consequently, while adopting the fair and accurate reporting privilege in the context of a judicial proceeding, our discussion of the privilege in *Nixon* provides little guidance on whether it is an absolute or qualified privilege and whether a showing of com-

mon law malice would defeat the privilege once it has been determined to be applicable. *Nixon* was also decided nearly 60 years before the Supreme Court articulated the First Amendment implications of defamation sanctions in *Sullivan*.

*Federal Case Law in Minnesota*

The Times cites to federal court decisions to support its claim that Minnesota law recognizes the fair and accurate reporting privilege as articulated in section 611. While a federal court's interpretation of a lacuna in Minnesota law may be persuasive, we are not bound to follow it. *See Northpointe Plaza v. City of Rochester*, 457 N.W.2d 398, 403 (Minn.App.1990), *aff'd*, 465 N.W.2d 686 (Minn.1991). The Times refers us to *Schuster v. U.S. News & World Report, Inc.*, where the U.S. District Court for Minnesota granted summary judgment for the defendant news agencies that had reported that the plaintiffs had been indicted on charges of smuggling laetrile into the United States. 459 F.Supp. 973, 974 (D.Minn.1978), *aff'd*, 602 F.2d 850 (8th Cir.1979). The district court, applying Minnesota law, held that the reports were privileged as fair and accurate reports on official actions or judicial proceedings, citing to section 611 and *Nixon* as authority. *See* 459 F.Supp. at 978.

In reaching its conclusion, the *Schuster* court cited Minn.Stat. § 609.765, subd. 3(4) dealing with criminal defamation. *See Schuster*, 459 F.Supp. at 978. That statute provides several privileges, specifically: that a violation of "subdivision 2 is justified if: * * * (4) The communication consists of a fair and true report or a fair summary of any judicial, legislative or other public or official proceedings * * *." Minn.Stat. § 609.765, subd. 3(4) (1998) (emphasis added). In reviewing this statute, the federal district court relied on the 1963 advisory committee comment to section 609.765 that stated:

**Subd. 3, 4:** This will supercede Minn. St. § 619.55 which, however, is directed toward newspapers and seems to imply liability in the case of a true and fair report if actual malice is present. *Under the recommended section, if the report is fair and true, malice is immaterial and no criminal liability arises. The public interest in publication of the proceedings referred to would seem to call for this position.*

It was not intended to change the holding in Nixon v. Dispatch Printing Co., 1907, 101 Minn. 309, 112 N.W. 258, to the effect that Minn.St. § 619.55 did not warrant a newspaper copying portions of a complaint on file with the clerk of court.

Minn.Stat.Ann. § 609.765, advisory committee cmt. (West 1964) (emphasis added).

While section 609.765 is limited in direct application to the criminal context, the *Schuster* court appears to have found this section persuasive in the civil context as well. *See Schuster*, 459 F.Supp. at 978. It is worth noting that in *Nixon* we similarly turned to the predecessor of section 609.765, Rev. Laws 1905, § 4920, for guidance in our discussion of the privilege. *See Nixon*, 101 Minn. at 311, 112 N.W. at 258.

The Eighth Circuit Court of Appeals affirmed *Schuster*, agreeing with the district court that these reports were privileged under Minnesota law as fair and accurate reports of public proceedings, citing *Nixon* and Minn.Stat. § 609.765, subd. 3(4). *See Schuster v. U.S. News & World Report, Inc.*, 602 F.2d 850, 854, 854 n. 8 (8th Cir.1979). However, the Eighth Circuit did not cite section 611 to support its conclusions on the fair and accurate reporting privilege in Minnesota. Recently, the federal district court for Minnesota, again citing to section 611 as the law in Minnesota, followed the *Schuster* rule in *Conroy v. Kilzer*, 789 F.Supp. 1457, 1463 (D.Minn.1992).

*Restatement (Second) of Torts § 611*

As previously noted, in *Nixon* we recognized a privilege for the fair and accurate

reporting of judicial proceedings. *See Nixon,* 101 Minn. at 311, 112 N.W. at 258. However, in *Nixon,* we did not discuss the nature and scope of the privilege nor did we discuss its application to other public proceedings. In determining whether the fair and accurate reporting privilege should be applied to the Times' article, a review of Restatement (Second) of Torts § 611's specific articulation of the common law is helpful to our analysis.

Section 611 states that

[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported.

Restatement (Second) of Torts § 611. Section 611 is set apart both from the absolute privileges in sections 585 to 592A and the conditional or qualified privileges in sections 594 to 598A. *See generally* Restatement (Second) of Torts §§ 585–598A.

Comment a to section 611 describes the nature of this privilege as applied in various jurisdictions and states that it is not "an absolute privilege. It is, however, somewhat broader in its scope than the conditional privileges covered in §§ 594 to 598A." Restatement (Second) of Torts § 611, cmt. a. Additionally, comment a notes that the purpose of the fair and accurate reporting privilege is to ensure that the public interest is served by the dissemination of information about events occurring at public proceedings and public meetings. *See id.* The privilege rests on two basic principles. First, because the meeting was public, a fair and accurate report would simply relay information to the reader that she would have seen or heard herself were she present at the meeting. *See Prosser and Keeton on Torts* § 115, at 836. The second principle is the "obvious public interest in having public affairs made known to all." *Id.* As stated earlier, the privilege may be lost by

a showing that the report is not a fair and accurate representation of the proceedings or meetings. *See id.* § 115, at 837.

Comment b to section 611 directly addresses the situation where the person alleging defamation is a public figure, stating:

The constitutional requirement of fault is met in this situation by a showing of fault in failing to do what is reasonably necessary to insure that the report is accurate and complete or a fair abridgment. The distinction as to the measure of fault as set forth [for public figures] and [for private persons] is applicable to the requirement of fault for this purpose, too.

Restatement (Second) of Torts § 611, cmt. b. In other words, once it is established that the report is within the scope of the fair and accurate reporting privilege, fault is not determined by the truth or falsity of the content of the defamatory statement. It is determined by the accuracy with which the statement is reported.

As the above quotation from comment b makes clear, the level of care required in making a fair and accurate report under this section will depend on the status of the person claiming to be defamed. Once it has been determined that the report is inaccurate or is not a fair abridgment, then under the Supreme Court's holdings in *Sullivan* and *Gertz,* there must be some showing of fault before liability for defamation may be imposed. For public figures, as stated in *Sullivan,* there would need to be a showing that the publisher was at least reckless in failing to accurately and completely report or produce a fair abridgment. 360 U.S. at 279–80, 79 S.Ct. 1184. For a private person, there would need to be only a showing of negligence. *Jadwin,* 367 N.W.2d at 491.

While the protection provided by section 611 is broad, this broad protection is balanced by a narrow application. First, this protection only applies to reports of public proceedings. Second, the report must be

either an accurate and complete report of events at the proceeding or a fair abridgment thereof. Comment f notes that a report cannot be edited in such a manner as to misrepresent the proceeding and become misleading. *See* Restatement (Second) of Torts § 611, cmt. f. A reporter also may not make additional comments, not part of the meeting, that would convey a defamatory impression or "impute corrupt motives to any one, [or] * * * indict expressly or by innuendo the veracity or integrity of any of the parties." *Id.* at comment h (stating that while reports of arrest and charging are privileged under section 611, statements made by the police, complaining witnesses, or the prosecuting attorney not confined to the facts of the arrest or charge are not).

### Section 611 in Other Jurisdictions

In the case before us, both the Times and Officer Moreno have made reference to the decisions of other jurisdictions to support their claim that section 611 is or is not accepted by the majority of jurisdictions. However, the patchwork nature of the law of defamation and confusion across jurisdictions makes articulating a clear statement concerning a majority or minority position on section 611 difficult. *See generally Prosser and Keeton on Torts* § 111, at 772. Defamation actions in many of the jurisdictions cited are regulated by statute, not the development of the common law. *See, e.g., WKRG–TV, Inc. v. Wiley,* 495 So.2d 617, 618–19 (Ala.1986) (rejecting section 611 as contrary to Alabama statutory provisions for a fair and accurate reporting privilege). Other jurisdictions, while accepting section 611 as a general description of the privilege, have retained their own common law interpretations of its limits. *See, e.g., Sciandra v. Lynett,* 409 Pa. 595, 187 A.2d 586, 589 (1963) (accepting section 611, but stating that the privilege is lost upon a showing that the material was published solely for the purpose of causing harm to the person defamed). Further, much of the law of defamation developed before *Sullivan* and

it is not clear if it subsequently has been reevaluated. *See, e.g., id.*

Probably the clearest generalization that can be made concerning the holdings of other jurisdictions on section 611 is as follows. Those jurisdictions that have expressly rejected section 611 have done so on statutory grounds or for reasons related to the development of their own common law, also reasoning that the First Amendment protections of *Sullivan* are sufficient to protect the public interest in a free exchange of information. *See, e.g., WKRG–TV,* 495 So.2d at 619. Those jurisdictions that have expressly adopted section 611 have done so because they have agreed with the reasons expressed in the Restatement: that the information was already public at its release and that the public interest in knowing the events of public proceedings is better served by protecting a fair and accurate relaying of these events. *See, e.g., Chesapeake Pub. Corp. v. Williams,* 339 Md. 285, 661 A.2d 1169, 1174–75 (1995); *Jones v. Taibbi,* 400 Mass. 786, 512 N.E.2d 260, 266 (1987); *Hayes v. Newspapers of N. H., Inc.,* 141 N.H. 464, 685 A.2d 1237, 1238–39 (1996).

### Minnesota's Fair and Accurate Reporting Privilege

We agree with the policy objective that the fair and accurate reporting privilege supports—that the public interest is served by the fair and accurate dissemination of information concerning the events of public proceedings. Further, we find persuasive the Restatement (Second) of Torts § 611's articulation of the common law on the fair and accurate reporting privilege. However, our decision here must be limited to the legal questions presented by the facts of this case and made within the context of our own common law.

In *Nixon,* we recognized a privilege for the fair and accurate reporting of a judicial proceeding. The same policy considerations found in *Nixon* support extending that privilege to fair and accurate reports of legislative proceedings as well, including city council meetings. Also, our

legislature has stated that, in the criminal context, the policy objectives of a fair and accurate reporting privilege are furthered by protecting such reports from challenges of common law malice. *See* Minn.Stat. § 609.675, advisory committee cmt. (1964). We believe that the policy objectives of the fair and accurate reporting privilege warrant such protection in the civil context as well. Accordingly, we conclude that the fair and accurate reporting privilege extends to protect the accurate and complete report or a fair abridgment of events that are part of the regular business of a city council meeting. This privilege will not be defeated by a showing of common law malice, but is defeated by a showing that the report is not a fair and accurate report of that proceeding. The Supreme Court's decisions in *Sullivan* and *Gertz* and our subsequent decisions should then be used to determine the standard of care required by a publisher to ensure the fairness and accuracy of such a report. *See generally Jadwin*, 367 N.W.2d at 491–92.

## III.

■■■ Having concluded that the fair and accurate reporting privilege extends to city council meetings, we must now decide whether the Times' March 23 article was a fair and accurate report of the March 10 city council meeting. Our examination of the Times' article leads us to conclude that the district court erred in its application of the fair and accurate reporting privilege to this article. We reach this conclusion because the article included material reporting on events other than those that occurred at the city council meeting.

Section 611's description of what additions will generally defeat the fairness and accuracy of a report is helpful to our analysis in this case. Section 611's commentators note that a "reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of

the parties." Restatement (Second) of Torts § 611, cmt. f. This limitation on the privilege also is expressed with respect to arrests. *See id.* at cmt. h. While an arrest or indictment is an official act generally covered by this section, "statements made by the police or by the complainant or other witnesses or by the prosecuting attorney as to the facts of the case or evidence expected to be given are not yet part of the judicial proceeding or, of the arrest itself and are not privileged under this Section." *Id.*

We have applied a similar rule in the context of the official immunity that a police officer has with respect to allegedly defamatory statements made in a police report. *See Carradine v. State*, 511 N.W.2d 733, 737 (Minn.1994). In *Carradine*, we were asked to decide whether comments made by a police officer to the press concerning the officer's arrest of the plaintiff were absolutely privileged, protecting the officer from civil liability for defamation. *See id.* We stated that as long as the officer's comments only reiterated the contents of his official report, he was protected. *See id.* However, we also stated that to the extent that his comments departed from his report and those comments not in his report significantly added to the plaintiff's injury, then such comments would not be privileged. *See id.* We remanded that issue to the district court to make the necessary factual determinations. *See id.*

■■■ Even though a fair and accurate report of a city council meeting is privileged, that privilege can be defeated if additional contextual material, not part of the proceeding, is added that conveys a defamatory impression or comments on the veracity or integrity of any party. The entire report then would be subject to evaluation as any other allegedly defamatory statement. As we noted in *Carradine*, determining whether additional material affected the nature of the report is a question best left to the district courts. *Id.*

In his complaint, Officer Moreno alleges that the Times' March 23 article was defamatory. He does not distinguish any particular part, but addresses the article as a whole and we concluded earlier that he has pleaded facts sufficient to place the entire article at issue. Of the nine paragraphs in the article, only three actually report on the events of the city council meeting. While it appears that these three paragraphs are fair and accurate descriptions of the events of the city council meeting, the other six paragraphs relate to subsequent events. Viewing this article in the light most favorable to the nonmoving party, as we must on appeal from summary judgment, the article contains information and facts which could raise material issues of fact. *See Fahrendorff ex rel. Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn.1999).

More particularly, the article deals with the activities of local authorities in response to McDaniel's accusation. The article also discusses local rumors about the arrest of police officers. Finally, the article relays an interview with Chief Monteen about the investigation and about McDaniel. The report of the fact that there is an official investigation underway arguably adds credibility to McDaniel's accusation and could increase the defamatory effect of this article. The article also contains references to McDaniel that could be interpreted as commenting on his "veracity or integrity." The record before us does not indicate that these issues were argued before the district court nor did the court make any findings concerning these issues.

We conclude that the record on appeal does not permit us to determine as a matter of law whether the material in the Times' article that reported events other than those of the city council meeting conveyed a defamatory impression or impermissibly commented on McDaniel's veracity or integrity. Accordingly, we remand to the district court for further determination of the question of whether the material in the Times' article, which did not report on the events of the council meeting, conveyed a defamatory impression or commented on the veracity or integrity of any party.

In summary, we hold that the fair and accurate reporting privilege extends to protect the accurate and complete report or a fair abridgment of events that are part of the regular business of a city council meeting and that this privilege is not defeated by a showing of common law malice, but is defeated by a showing that the report is not a fair and accurate report of that proceeding. We also hold that the district court erred in its application of the fair and accurate reporting privilege to this article in failing to determine whether the additional material included in the article either conveyed a defamatory impression or commented on the veracity or integrity of any party. However, as we noted earlier, the Times asserted several defenses of privilege in its answer. The fair and accurate reporting privilege is the only one presented to us on appeal. Therefore, our analysis should not be construed to imply that if the fair and accurate reporting privilege does not apply, the Times' article is defamatory or that other privileges are not appropriate. *See, e.g., Britton v. Koep*, 470 N.W.2d 518, 520 (Minn.1991) (recognizing a qualified privilege for fair comment on performance of public officials).

We reverse the court of appeals and remand this matter to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

RUSSELL A. ANDERSON, J., took no part in the consideration or decision of this case.